# SUBORDINATED POST-PETITION
# LOAN AND SECURITY AGREEMENT

This Subordinated Post-Petition Loan and Security Agreement dated [_____], 2010 (this "**Agreement**"), between **[_____]**, as the lender (the "**Lender**"), **VITRO AMERICA, LLC**, a Delaware limited liability company ("**Vitro America**"), **VVP FINANCE CORPORATION**, a Delaware corporation (together with Vitro America, the "**Borrowers**"), **VVP HOLDINGS, LLC**, a Delaware limited liability company ("**Holdings**"), **VVP AUTO GLASS, INC**., a Delaware corporation ("**Auto Glass**"), **SUPER SKY INTERNATIONAL, INC**., a Delaware corporation ("**International**") and **SUPER SKY PRODUCTS, INC**., a Wisconsin corporation ("**Products**," and collectively with Holdings, Auto Glass and International, the "**Guarantors**", and together with the Borrowers, the "**Obligors**").

W I T N E S S E T H:

The Obligors are parties to that certain Amended and Restated Loan and Security Agreement dated June 27, 2003 (as at any time amended, restated, supplemented or otherwise modified, the "**Pre-Petition Loan Agreement**") between Bank of America, N.A., as lender (the "**Senior Creditor**"), the Borrowers and the Guarantors, pursuant to which the Senior Creditor has made certain loans and other financial accommodations to Borrowers from time to time.

Each Obligor is an alleged debtor in an involuntary case under Chapter 11 of the Bankruptcy Code (collectively, the "**Cases**") pending in the United States Bankruptcy Court for the Northern District of Texas (Fort Worth Division) (together with any other court having jurisdiction over the Case or any proceedings therein from time to time, the "**Court**"), as Case Nos. 10-47470 (RFN-11), 10-47472 (DML-11), 10-47473 (DML-11), 10-47474 (RFN-11),10-47475 (DML-11), 10-47477 (DML-11), 10-47478 (RFN-11), 10-47479 (DML-11), 10-47480 (RFN-11), 10-47481 (RFN-11), 10-47482 (DML-11), 10-47483 (DML-11), 10-47484 (RFN-11),10-47485 (DML-11), and 10-47486 (RFN-11). Borrowers have requested that Lender extend subordinated financing to Borrowers in connection with the Cases.

The Senior Creditor is willing to consent to the loans and security interest in the Collateral (defined below) granted to the Lender hereunder; *provided* that the loans and obligations owed to the Lender hereunder are subordinated to the obligations owed to the Senior Creditor on the terms set forth in the Financing Orders (defined below).

The Lender is willing to make loans and other extensions of credit to Borrowers subject to the terms and conditions contained herein and subject to the terms and conditions set forth in the Financing Orders.

Capitalized terms used in this Agreement and not otherwise defined herein shall have the meanings ascribed thereto in Annex A which is attached hereto and incorporated herein.

NOW, THEREFORE, in consideration of the mutual conditions and agreements set forth in this Agreement and for good and valuable consideration, the Lender and the Borrowers agree as follows:.

#4817-4642-7656

# ARTICLE 1
## SUBORDINATED LOAN FACILITY

SECTION 1.1. Subordinated Loan Facility. Lender agrees, to the extent and in the manner hereinafter set forth, to make available term loans in an aggregate principal amount of up to $3,000,000 (the "**Subordinated Loan Facility**" and the loans thereunder, "**Subordinated Loans**") to the Borrowers during the term of this Agreement.

SECTION 1.2. Making of Loans.

Subject to entry of the Interim Financing Order, the Lender shall make initial Subordinated Loans in an aggregate principal amount of $[____] available to the Borrowers. Thereafter, the Borrowers may request that the Lender make additional Subordinated Loans available from time, which additional Subordinated Loans shall be made in the sole discretion of the Lender. Amounts repaid may not be reborrowed.

SECTION 1.3. Use of Proceeds.

The proceeds of the Subordinated Loans shall be used by Borrowers for general corporate purposes, subject to any limitations in the Financing Orders.

# ARTICLE 2
## INTEREST

All outstanding Subordinated Loans shall bear interest on the unpaid principal amount thereof (including, to the extent permitted by law, on interest thereon not paid when due) from the date made until paid in full in cash at a rate equal to 5.25% per annum. The Borrowers shall pay to the Lender interest accrued on all Subordinated Loans on the Termination Date.

# ARTICLE 3
## PAYMENTS AND PREPAYMENTS

SECTION 3.1. Repayment of Loans. The Borrowers shall repay the outstanding principal balance of the Subordinated Loans, plus all accrued but unpaid interest thereon, on the Termination Date. The Borrowers may prepay Subordinated Loans at any time, subject always to the terms of the Financing Orders.

SECTION 3.2. Lender's Books and Records. The Lender shall record the principal amount of the Subordinated Loans owing to the Lender from time to time on its books. The Lender's books and records shall conclusively evidence the outstanding Subordinated Loans hereunder, irrespective of whether any Subordinated Loan is also evidenced by a promissory note or other instrument.

# ARTICLE 4
## GENERAL WARRANTIES AND REPRESENTATIONS

Each Borrower warrants and represents to the Lender:

SECTION 4.1. <u>Authorization, Validity, and Enforceability</u>. Such Borrower has the power and authority to execute, deliver and perform this Agreement and to grant to the Lender Liens upon and security interests in the Collateral.

SECTION 4.2. <u>Validity and Priority of Security Interest</u>. The Liens granted pursuant to this Agreement constitute legal, valid and perfected Liens on the Collateral.

SECTION 4.3. <u>Organization and Qualification</u>. Such Borrower (a) is duly organized or incorporated and validly existing in good standing (except as a result of the Cases) under the laws of the state of its organization or incorporation, (b) is qualified to do business and is in good standing (except as a result of the Cases) in all jurisdictions in which qualification is necessary in order for it to own or lease its property and conduct its business and (c) has all requisite power and authority to conduct its business and to own its property.

# ARTICLE 5
## DEFAULT; REMEDIES

SECTION 5.1. <u>Events of Default</u>. It shall constitute an event of default ("**Event of Default**") if any one or more of the following shall occur for any reason:

(a) any failure by the Obligors to pay the principal of or interest on any of the Subordinated Loans or any other Guaranteed Obligations when due, whether upon demand or otherwise;

(b) a Final Financing Order is not entered on or prior to [_], 2010; or

(c) the occurrence of any "Event of Default" under the Pre-Petition Loan Agreement.

SECTION 5.2. <u>Remedies</u>.

(a) If an Event of Default exists, the Lender may, in its discretion, do one or more of the following, in addition to the actions described in the preceding sentence, at any time or times and in any order, without notice to or demand on any Borrower: (A) terminate this Agreement; (B) declare any or all Obligations to be immediately due and payable; and (C) pursue its other rights and remedies under this Agreement and applicable law, subject always to the subordination provisions of the Financing Orders.

(b) Subject always to the terms of the subordination provisions of the Financing Orders, if an Event of Default has occurred and is continuing, the Lender shall have in addition to all other rights of the Lender, the rights and remedies of a secured party under the UCC.

3

# ARTICLE 6
## TERM AND TERMINATION

The term of this Agreement shall end on the Termination Date unless sooner terminated in accordance with the terms hereof. The Lender may terminate this Agreement without notice upon the occurrence of an Event of Default. Upon the effective date of termination of this Agreement for any reason whatsoever, all Obligations (including all unpaid principal, accrued and unpaid interest and any early termination or prepayment fees or penalties) shall become immediately due and payable.

# ARTICLE 7
## SECURITY INTEREST

(a) To secure the payment, observance and performance of the Obligations, each Borrower hereby mortgages, pledges, assigns and grants to Lender a Lien and security interest on the Collateral and agrees that such mortgages, pledges, assignments, Liens and security interests will constitute continuing security interests in and Liens on the Collateral, in favor of the Lender, as security for the Obligations. Pursuant to Sections 364(c) and (d) of the Bankruptcy Code, such Liens and security interests will constitute valid, perfected and enforceable security interests in and Liens on the Collateral and all proceeds, products, substitutions and replacements thereof.

(b) The security interests in and Liens on the Collateral securing the Obligations will be senior in rank and priority to all other Liens on and security interests in the Collateral, subject only to (i) any other valid, perfected and enforceable security interests and Liens existing as of the Involuntary Petition Date that are nonavoidable under the Bankruptcy Code or applicable nonbankruptcy law and (ii) Liens in favor of the Senior Creditor.

# ARTICLE 8
## GUARANTEES

(a) The Guarantors hereby jointly and severally guarantee to Lender the prompt payment in full when due (whether at stated maturity, by acceleration or otherwise) of the Subordinated Loans and all of the other Obligations hereunder, including any interest, fees and expenses accrued or incurred after the filing by or against any Obligor of any petition seeking relief in bankruptcy or under any act or law pertaining to insolvency or debtor relief, regardless of whether such interest, fees and expenses are allowable in any such proceeding (collectively, the "<u>Guaranteed Obligations</u>"), in each case strictly in accordance with the terms of this Agreement. The Guarantors hereby further jointly and severally agree that if any Borrower shall fail to pay in full when due (whether at stated maturity, by acceleration or otherwise) any of the Guaranteed Obligations, the Guarantors will promptly pay the same, without any demand or notice whatsoever, and that in the case of any extension of time of payment or renewal of any of the Guaranteed Obligations, the same will be promptly paid in full when due (whether at extended maturity, by acceleration or otherwise) in accordance with the terms of such extension or renewal.

4

(b) The obligations of the Guarantors hereunder are absolute and unconditional, joint and several, irrespective of the value, genuineness, validity, regularity or enforceability of the obligations of the Borrowers under this Agreement or any substitution, release or exchange of any other guarantee of or security for any of the Guaranteed Obligations, and, to the fullest extent permitted by applicable law, irrespective of any other circumstance whatsoever that might otherwise constitute a legal or equitable discharge of defense of a surety or guarantor, it being the intent hereof that the obligations of the Guarantors hereunder will be absolute and unconditional, and joint and several, under all circumstances.  Without limiting the generality of the foregoing, it is agreed that each Guarantor's obligations hereunder will be absolute and unconditional irrespective of: (i) any lack of validity or enforceability of any of the Borrowers' obligations hereunder or of any agreement or instrument relating thereto; (ii) any change in the time, manner or place of payment of, or in any other term of, all or any part of the Guaranteed Obligations, or any  other amendment or waiver thereof or any consent to departure therefrom, including any increase in the Guaranteed Obligations resulting from the extension of additional credit to any Borrower or otherwise; (iii) any taking, exchange, release or non-perfection of any Collateral,  or any release or amendment or waiver of or consent to departure from any guaranty for all or any of the Guaranteed Obligations; (iv) any change, restructuring or termination of the corporate structure or existence of any Obligor; or (v) any other circumstance which might otherwise constitute a defense available to, or a discharge of, any Guarantor.

## ARTICLE 9
## MISCELLANEOUS

Section 9.1     <u>No Waivers; Cumulative Remedies</u>.  No failure by the Lender to exercise any right, remedy, or option under this Agreement or any present or future supplement thereto, or in any other agreement between any Borrower and the Lender, or delay by the Lender in exercising the same, will operate as a waiver thereof.  No waiver by the Lender will be effective unless it is in writing, and then only to the extent specifically stated.  No waiver by the Lender on any occasion shall affect or diminish the Lender's rights thereafter to require strict performance by the Borrowers of any provision of this Agreement.  The Lender may proceed directly to collect the Obligations without any prior recourse to the Collateral.  The Lender's rights under this Agreement will be cumulative and not exclusive of any other right or remedy which the Lender may have.

Section 9.2     <u>Governing Law</u>.

THIS AGREEMENT SHALL BE INTERPRETED AND THE RIGHTS AND LIABILITIES OF THE PARTIES HERETO DETERMINED IN ACCORDANCE WITH THE LAW OF THE STATE OF NEW YORK.  TO THE EXTENT ANY PROVISIONS IN THIS AGREEMENT ARE INCONSISTENT WITH ANY OF THE PROVISIONS OF THE FINANCING ORDERS, THE PROVISIONS OF THE FINANCING ORDERS SHALL GOVERN AND CONTROL.

#4817-4642-7656

IN WITNESS WHEREOF, the parties have entered into this Agreement on the date first above written.

**"BORROWERS"**

**VITRO AMERICA, LLC.**

By: _____
     Title: _____

Attest _____
      Title:_____

[CORPORATE SEAL]
**VVP FINANCE CORPORATION**
**By:**

    **Title:** _____

**Attest** _____

    **Title:**_____

#4817-4642-7656

**"GUARANTORS"**

**[____]**

By: _____
      Title: _____

Attest _____
      Title: _____

[CORPORATE SEAL]
**[_____]**
**By:**

      **Title:** _____

**Attest** _____

      **Title:** _____

7

#4817-4642-7656

**"LENDER"**

[_____], the Lender

By: _____
   _____, _____

#4817-4642-7656

# ANNEX A
## Definitions

Capitalized terms used in this Agreement shall have the following respective meanings (unless otherwise defined therein), and all section references in the following definitions shall refer to sections of the Agreement:

"Accounts" means all of a Borrower's now owned or hereafter acquired or arising accounts, as defined in the UCC, including any rights to payment for the sale or lease of goods or rendition of services, whether or not they have been earned by performance.

"Account Debtor" means each Person obligated in any way on or in connection with an Account, Chattel Paper or General Intangibles (including a payment intangible).

"Bankruptcy Code" means Title 11 of the United States Code (11 U.S.C. § 101 et seq.).

"Cases" has the meaning specified in the recitals of the Agreement.

"Chattel Paper" means all of each Borrower's now owned or hereafter acquired chattel paper, as defined in the UCC, including electronic chattel paper.

"Collateral" means all assets of each Borrower, whether now owned or existing or hereafter acquired or arising, and regardless of where located, including, without limitation, the following:

(i) All Accounts;

(ii) All Inventory;

(iii) All contract rights, including, without limitation, all rights and remedies under, and all moneys and claims for money due or to become due to a Borrower under any contracts, and any and all amendments, supplements, extensions, and renewals thereof including all rights and claims now or hereafter existing (a) under any insurance, indemnities, warranties, and guarantees provided for or arising out of or in connection with any of the foregoing contracts; (b) for any damages arising out of or for breach or default under or in connection with any of the foregoing contracts; (c) to all other amounts from time to time paid or payable under or in connection with any of the foregoing contracts; or (d) to exercise or enforce any and all covenants, remedies, powers and privileges thereunder;

(iv) All Chattel Paper;

(v) All Documents (as defined in the UCC);

(vi) All Instruments;

(vii) All Supporting Obligations;

   (viii) All General Intangibles;

   (ix) All Equipment;

   (x) All Deposit Accounts;

   (xi) The proceeds of any commercial tort claims, including those shown on Schedule C-1 to the Pre-Petition Loan Agreement;

   (xii) All Investment Property;

   (xiii) All Real Estate and fixtures;

   (xiv) All letter-of-credit rights;

   (xv) All books, records and other property related to or referring to any of the foregoing, including books, records, account ledgers, data processing records, computer software and other property and General Intangibles at any time evidencing or relating to any of the foregoing; and

   (xvi) All accessions to, substitutions for and replacements, products and proceeds of any of the foregoing, including, but not limited to, proceeds of any insurance policies, claims against third parties, and condemnation or requisition payments with respect to all or any of the foregoing.

   Collateral shall also include all property in which a Lien is granted as security for payment or performance of any of any obligations owed to the Senior Creditor.

   Notwithstanding anything to the contrary in any Subordinated Loan Document, the term, "Collateral" does not include any shares of capital stock or other ownership interests of the Borrowers in any of their Subsidiaries.

   "Deposit Accounts" means all "deposit accounts" as such term is defined in the UCC.

   "Equipment" means all of each Borrower's now owned and hereafter acquired machinery, equipment, furniture, furnishings, fixtures, and other tangible personal property (except Inventory), including embedded software, motor vehicles with respect to which a certificate of title has been issued, aircraft, dies, tools, jigs, molds and office equipment, as well as all of such types of property leased by such Borrower and all of such Borrower's rights and interests with respect thereto under such leases (including, without limitation, options to purchase); together with all present and future additions and accessions thereto, replacements therefor, component and auxiliary parts and supplies used or to be used in connection therewith, and all substitutes for any of the foregoing, and all manuals, drawings, instructions, warranties and rights with respect thereto; wherever any of the foregoing is located.

"Final Financing Order" means an order that is entered by the Court, following proper notice and a hearing thereon, which is in all respects satisfactory to Lender, and will contain terms substantially the same as those set forth in the Interim Financing Order.

"Financing Orders" means the Interim Financing Order and the Final Financing Order.

"General Intangibles" means all of each Borrower's now owned or hereafter acquired general intangibles, choses in action and causes of action and all other intangible personal property of each Borrower of every kind and nature (other than Accounts), including, without limitation, all contract rights, payment intangibles, proprietary rights, corporate or other business records, inventions, designs, blueprints, plans, specifications, patents, patent applications, trademarks, service marks, trade names, trade secrets, goodwill, copyrights, computer software, customer lists, registrations, licenses, franchises, tax refund claims, any funds which may become due to any Borrower in connection with the termination of any other employee benefit plan or any rights thereto and any other amounts payable to any Borrower any employee benefit plan, rights and claims against carriers and shippers, rights to indemnification, business interruption insurance and proceeds thereof, property, casualty or any similar type of insurance and any proceeds thereof, proceeds of insurance covering the lives of key employees on which any Borrower is beneficiary, rights to receive dividends, distributions, cash, Instruments and other property in respect of or in exchange for pledged equity interests or Investment Property and any letter of credit, guarantee, claim, security interest or other security held by or granted to any Borrower.

"Interim Financing Order" means an order that is entered by the Court pursuant to 11 U.S.C. §§ 105, 303, 361, 363, 364, and 552, which among other things, (I) authoring certain of the alleged debtors in the Cases to (a) continue to obtain secured financing, (b) to continue to utilize their cash management system and (c) to use cash collateral, (II) approves the post-petition financing under this Agreement (III) granting adequate protection and (IV) scheduling a final hearing.

"Inventory" means all of each Borrower's now owned and hereafter acquired inventory, goods and merchandise, wherever located, to be furnished under any contract of service or held for sale or lease, all returned goods, raw materials, work-in-process, finished goods (including embedded software), other materials and supplies of any kind, nature or description which are used or consumed in a Borrower's business or used in connection with the packing, shipping, advertising, selling or finishing of such goods, merchandise, and all documents of title or other documents representing them.

"Involuntary Petition Date" means November 17, 2010.

"Lien" means: (a) any interest in property securing an obligation owed to, or a claim by, a Person other than the owner of the property, whether such interest is based on the common law, statute, or contract, and including a security interest, charge, claim, or lien arising from a mortgage, deed of trust, encumbrance, pledge, hypothecation, assignment, deposit arrangement, agreement, security agreement, conditional sale or trust receipt or a lease, consignment or bailment for security purposes; and (b) to the extent not included under

3

clause (a), any reservation, exception, encroachment, easement, right-of-way, covenant, condition, restriction, lease or other title exception or encumbrance affecting property.

"Obligations" means all present and future loans, advances, liabilities, obligations, covenants, duties, and debts owing by any or all Borrowers or the Guarantors to the Lender arising under or pursuant to this Agreement or any of the other Subordinated Loan Documents, whether or not evidenced by any note, or other instrument or document, whether arising from an extension of credit, opening of a letter of credit, acceptance, loan, guaranty, indemnification or otherwise, whether direct or indirect, absolute or contingent, due or to become due, primary or secondary, as principal or guarantor, and including all principal, interest, charges, expenses, fees, attorneys' fees, filing fees and any other sums chargeable to any or all Borrowers hereunder or under any of the other Subordinated Loan Documents.

"Real Estate" means certain of each Borrower's now or hereafter owned or leased estates in real property, including, without limitation, all fees, leaseholds and future interests, together with all of such Borrower's now or hereafter owned or leased interests in the improvements thereon, the fixtures attached thereto and the easements appurtenant thereto.

"Subordinated Loan Documents" means this Agreement, the Financing Orders and any other instrument or agreement evidencing the Subordinated Loans or the Liens granted hereunder.

"Supporting Obligations" means all supporting obligations, as such term is defined in the UCC, that support the payment of Accounts, Chattel Paper, Documents, General Intangibles or Instruments.

"Termination Date" means the earliest to occur of (i) [__] and (ii) the date this Agreement is otherwise terminated for any reason whatsoever pursuant to the terms of this Agreement.

"UCC" means the Uniform Commercial Code, as in effect from time to time, of the State of New York or of any other state the laws of which are required as a result thereof to be applied in connection with the issue of perfection of security interests.

#4817-4642-7656