Thomas E Lauria
State Bar No. 11998025
J. Christopher Shore (admitted pro hac vice)
John K. Cunningham (admitted pro hac vice)
Richard Kebrdle (admitted pro hac vice)
WHITE & CASE LLP
1155 Avenue of the Americas
New York, NY 10036
Telephone:  (212) 819-8200
Facsimile:  (212) 354-8113

Jeff P. Prostok
State Bar No. 16352500
Lynda L. Lankford
State Bar No. 11935020
FORSHEY & PROSTOK LLP
777 Main St., Suite 1290
Ft. Worth, TX 76102
Telephone:  (817) 877-8855
Facsimile:  (817) 877-4151

ATTORNEYS FOR THE PETITIONING CREDITORS

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## FORT WORTH DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 11 Cases (Involuntary) |
| | ) | |
| VITRO ASSET CORP., et al., | ) | Case No. 10-47470-rfn-11 |
| | ) | |
| Debtors.[1] | ) | **Jointly Administered** |
| | ) | |

## SUPPLEMENTAL OBJECTION OF THE PETITIONING CREDITORS TO EMERGENCY JOINT MOTION OF ALLEGED DEBTORS AND VITRO S.A.B. DE C.V. FOR ENTRY OF ORDER PURSUANT TO 11 U.S.C. § 105(a) AND FED. R. BANK. P. 1014(b) WAIVING STAY OF PROCEEDINGS IN CHAPTER 15 CASE

TO THE HONORABLE RUSSELL F. NELMS, UNITED STATES BANKRUPTCY JUDGE:

Knighthead Master Fund, L.P., Brookville Horizons Fund, L.P., Davidson Kempner

Distressed Opportunities Fund L.P., and Lord Abbett Bond-Debenture Fund, Inc. (collectively,

the "Petitioning Creditors"), as creditors and parties in interest in the above-captioned chapter 11

cases, file this supplemental objection (the "Objection"), to the Emergency Motion of Alleged

Debtors and Vitro S.A.B. de C.V. for Entry of Order Pursuant to 11 U.S.C. § 105(a) and Fed. R.

---

[1]     The Debtors are Vitro Asset Corp., Vitro Chemicals, Fibers & Mining, LLC, Vitro America, LLC, Troper Services, Inc., Vitro Packaging, LLC, VVP Holdings, LLC, Amsilco Holdings, Inc., B.B.O. Holdings, Inc., Binswanger Glass Co., Crisa Corp., VVP Finance Corp., VVP Auto Glass, Inc., V-MX Holdings, LLC, Super Sky Products, Inc., and Super Sky International, Inc.

Bank. P. 1014(b) Waiving Stay of Proceedings in Chapter 15 Case (the "Emergency Motion").

The Emergency Motion should be denied for the reasons set forth below.

## PRELIMINARY STATEMENT

1.     The sole issue before the Court on the Emergency Motion is whether and to what extent the stay imposed by Rule 1014(b) ("Rule 1014(b)") of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") needs to be modified ***prior to*** this Court's adjudication of the Rule 1014(b) motion filed by the Petitioning Creditors in these chapter 11 cases (the "Venue Motion").  The purpose of Rule 1014(b) is abundantly clear: to permit the court in which the first-filed bankruptcy case is pending to determine whether a subsequently filed bankruptcy case by an affiliated debtor in another district should instead proceed before that "first-filed court."  Consolidating affiliated debtor cases with one bankruptcy court promotes judicial economy and avoids the inherent risk of inconsistent decisions concerning affiliated debtors by multiple courts dealing with overlapping and related issues.

2.     Here, the relevant facts are not in dispute:

- this Court is the "first-filed court" under Rule 1014(b), having presided over the Debtors' chapter 11 cases for more than a month;

- the Debtors are wholly-owned and controlled indirect subsidiaries of Vitro – making Vitro unquestionably an "affiliate" of the Debtors, thereby triggering application of Rule 1014(b);

- the Venue Motion was promptly filed with this Court by the Petitioning Creditors under Rule 1014(b) on the very same day that Vitro filed its chapter 15 petition last week with the United States Bankruptcy Court for the Southern District of New York (the "New York Bankruptcy Court");

- in their answer (the "Answer") to the involuntary chapter 11 petitions in these cases **prior to** commencement of Vitro's chapter 15 case with the New York Bankruptcy Court, the Debtors voluntarily submitted to this Court the issue of whether Vitro's bankruptcy proceedings in Mexico necessitate the suspension or dismissal of these cases under section 305 of title 11 of the United States Code (the "Bankruptcy Code")[2];

- Vitro has been in payment default on the Vitro Notes (defined below) since February 2009;

- in the twenty two months since such default, Vitro and the Debtors cite only a single New York state court enforcement action (the "New York State Action") against Vitro and its non-Debtor affiliates by two holders of the Vitro Notes, Aurelius and Elliott, as evidence of the emergency nature of the relief requested in the Motion; and

- the New York State Action involves, among other things, a suit to enforce the Vitro Notes as well as certain pre-judgment attachment relief with respect to Vitro's assets, yet Vitro and the Debtors admit in the Motion that there are no assets of Vitro located in New York or the United States.

3.      In light of the foregoing, the Petitioning Creditors respectfully submit there is no evidence of any "emergency" and the Motion requested by Vitro and the Debtors should be denied.  Put simply, if Vitro has no assets in the United States to protect, there can be no immediate and irreparable harm caused by the New York State Action.  Moreover, there is no reason why only the New York Bankruptcy Court, as opposed to this Court, can hear Vitro's yet-to-be-filed injunction motion.  In fact, the Petitioning Creditors have stipulated in writing not to challenge venue if Vitro simply refiles its chapter 15 petition with this Court.  That request was

---

[2] "Pursuant to section 305(a)(1) of the Bankruptcy Code, the interests of creditors would be better served by a dismissal of the above-captioned cases or a suspension of all proceedings in such cases."  Answer at ¶ 8.

ignored by Vitro – making patently clear that Vitro prefers the New York Bankruptcy Court to this Court. Vitro's preference of the New York Bankruptcy Court over this Court, however, is trumped by Rule 1014(b). Given this Court's familiarity with Vitro, the Debtors and the parties and their counsel in these chapter 11 cases, there is no question this Court is uniquely qualified to address the multinational and legal issues occasioned by Vitro's Mexican bankruptcy and restructuring efforts. In fact, this Court has already addressed such issues – and will continue to address such issues in these cases by virtue of the Debtors' Answer. For all of the reasons set forth herein, the Motion should be denied, and the Court should schedule a hearing on the Venue Motion in accordance with Rule 1014(b).

## STATEMENT OF FACTS

4.     Petitioning Creditors filed petitions (the "Chapter 11 Petitions") commencing the above-captioned involuntary cases (collectively, the "Cases") against Vitro Asset Corp. and its affiliated debtors (collectively, the "Debtors") under chapter 11 of title 11 of the Bankruptcy Code with this Court. The Cases are being jointly administered.

5.     Petitioning Creditors are holders or investment advisors to holders (the "Noteholders") of Senior Notes (the "Vitro Notes") issued by the Debtors' ultimate Mexican parent, Vitro S.A.B. de C.V. ("Vitro"), and guaranteed by each of the Debtors. The Petitioning Creditors are members of the Ad Hoc Group of Vitro Noteholders (the "Ad Hoc Noteholder Group") which holds or controls in the aggregate over $720 million in principal amount of Vitro Notes.

6.     Vitro (and together with its affiliated debtors and non-debtor entities, the "Company") is a corporation organized under the laws of Mexico and is a holding company that conducts substantially all of its operations through its subsidiaries both outside and within the

United States. Each Debtor is a subsidiary of Vitro that is domiciled in the United States in one of various states. As stated, each Debtor has unconditionally guaranteed the Vitro Notes as described more fully below.

7.     Vitro's liabilities include, but are not limited to, the Vitro Notes, which consist of over $1.2 billion in principal amount of senior unsecured notes outstanding. Vitro issued each series of Vitro Notes to the public in the United States and is a reporting company with respect to each such series pursuant to section 15(g) of the Securities Exchange Act of 1934. Each of the Debtors executed an unconditional guaranty of Vitro's obligations in respect of the Vitro Notes pursuant to the indentures governing the Vitro Notes.

8.     On November 1, 2010, Vitro launched the Tender Offer, Exchange Offer and Consent Solicitation (the "Solicitation") seeking to implement a pre-packaged reorganization plan in Mexico (the "Concurso Plan") under Mexican bankruptcy law, "*Ley De Concursos Mercantiles*" (the "Mexican Business Reorganization Act") to force the Noteholders to accept the Company's terms.

9.     On December 9, 2010, the Debtors filed their Answer to the Chapter 11 Petitions, raising certain affirmative defenses and purporting to reserve the right to seek dismissal of these Cases at a later date.

10.    On December 10, 2010, certain of the Petitioning Creditors filed their own involuntary petition ("Involuntary *Concurso*") against Vitro under the Mexican Business Reorganization Act in the Federal District Court for Civil and Labor Matters for the State of Nuevo León in Monterrey, Mexico (the "Mexican Court"). The Involuntary *Concurso* is currently before Judge Francisco Eduardo Flores Sanchez. On December 16, 2010, Judge Flores Sanchez entered a resolution accepting the Involuntary *Concurso*, and he directed the

appointment of an examiner (or *visitador*) to inspect Vitro's financial records.  See Involuntary *Concurso* Order attached hereto as Exhibit A.  Vitro's purported foreign representative is not the examiner in the Involuntary *Concurso*.

11.     On December 14, 2010 Vitro announced it had commenced a voluntary *concurso mercantil* proceedings in Mexico (the "Voluntary Concurso") by filing a petition for relief under the Mexican Business Reorganization Act along with an alleged pre-packaged *Concurso* Plan.

12.     Under Mexican law, the Debtors—as U.S. companies—are not eligible to be Debtors in insolvency proceedings in Mexico, including the *Concurso* Plan filed by Vitro.

13.     On December 14, 2010, Vitro filed a petition (the "Chapter 15 Petition") under chapter 15 of the Bankruptcy Code with the New York Bankruptcy Court (Bankruptcy Judge Sean H. Lane) commencing Vitro's chapter 15 case (the "Chapter 15 Case").  See Chapter 15 Petition attached hereto as Exhibit B.  In the Chapter 15 Case, Vitro identified Mr. Alejandro Francisco Sánchez-Mujica as the "foreign representative" for its Voluntary Concurso.

14.     Also on December 14, 2010, the Petitioning Creditors filed the Venue Motion pursuant to Rule 1014(b) of the Bankruptcy Rules seeking a transfer of the Chapter 15 Case to the Northern District of Texas.  See Dkt. No. 76.  The Venue Motion had the effect of staying the Chapter 15 Case under Rule 1014(b).  The next day, Vitro and the Debtors filed the Emergency Motion seeking a waiver of the stay.  That same day, the Petitioning Creditors filed a preliminary objection to the Emergency Motion (the "Preliminary Objection").  See Dkt. No. 85.

15.     Most of Vitro's non-Debtor affiliates are located in Mexico and, on information and belief, all of the officers and directors of Vitro are domiciled in Mexico.

16.     Each Debtor is located in the United States, and two are incorporated in Texas.  See Form T-3 at 3-4 (identifying Vitro Asset Corp. and Vitro Chemicals, Fiber & Mining LLC as Texas corporations).  According to its website, Vitro America LLC ("Vitro America") is headquartered in Memphis, Tennessee and has a single manufacturing facility in Grenada, Mississippi.  See Vitro America Locations, available at http://www.vitroamerica.com/locations.asp.  Vitro America has two fabrication facilities in Texas and one each in California, Nevada, and North Carolina.  It also has distribution facilities throughout the southern United States, the most northeastern of which is in Virginia.

## OBJECTION

### I.  The Debtors Have Failed to Demonstrate That the Stay Imposed by Bankruptcy Rule 1014(b) Should be Waived

17.     Rule 1014(b) sets forth procedures governing situations in which two or more petitions involving affiliated debtors have been filed in different courts.  Specifically, Rule 1014(b) provides:

> If petitions commencing cases under the Code or seeking recognition under chapter 15 are filed in different districts by, regarding, or against (1) the same debtor, (2) a partnership and one or more of its general partners, (3) two or more general partners, or (4) a debtor and an affiliate, on motion filed in the district in which the petition filed first is pending and after hearing on notice to the petitioners, the United States trustee, and other entities as directed by the court, the court may determine, in the interest of justice or for the convenience of the parties, the district or districts in which the case or cases should proceed.  Except as otherwise ordered by the court in the district in which the petition filed first is pending, the proceedings on the other petitions shall be stayed by the courts in which they have been filed until the determination is made.

Fed. R. Bankr. P. 1014(b).

18.     The underlying purpose of Rule 1014(b) is "to avoid inefficiencies and waste of judicial and other resources."  In re Raytech Corp., 222 B.R. 19, 24 (Bankr. D. Conn.

1998).  As set forth in Collier on Bankruptcy, "If the cases have been filed in different districts, the best way to coordinate or consolidate the cases is usually to bring them within one district." 9 <u>Collier on Bankruptcy</u> ¶ 1014.04.  The need for such a rule is obvious where two or more related proceedings have been commenced in different courts.  In the interests of judicial economy, and to avoid the inherent risks of conflicting decisions, duplication of evidence and proceedings in different courts on related issues, and the needless incurrence of additional expense and delay addressing such issues simultaneously in different courts, Rule 1014(b) grants discretion to the "first filed" court to determine where subsequent cases of affiliated debtors should proceed.

19.     Indeed, Rule 1014(b) addresses the above problems by several means.  For example, the Rule prevents dueling transfer orders by clearly defining which court is authorized to determine the district in which the proceedings are heard (motions must be made in "district in which the petition filed first is pending").  Fed. R. Bankr. P. 1014(b).  In addition, Rule 1014(b) provides that, once a motion has been filed, no actions may be taken in the other proceedings without the permission of the court in which the first petition was filed.  Specifically, when a motion seeking a determination regarding "the district or districts in which the case or cases should proceed" is filed, all proceedings other than the first-filed proceeding are stayed "until the determination is made" (the "Rule 1014(b) Stay").  <u>Id.</u>  <u>See, e.g.</u>, <u>Coston v. Bank of Malvern (In re Coston)</u>, 987 F.2d 1096 (5th Cir. 1992) (recognizing that Rule 1014(b) stayed subsequently filed voluntary bankruptcy case where involuntary case against same debtor was already pending).

20.     Rule 1014(b) provides a single exception to the Rule 1014(b) Stay, stating – without elaboration – that such stay applies "except as otherwise ordered by the court."  <u>Id.</u>

Neither the text of Rule 1014(b) nor the Rule's legislative history, however, provides any guidance as to when a court should apply this exception. Similarly, this aspect of Rule 1014(b) is rarely addressed in any detail by the courts, and there does not appear to be any well-defined test for determining when the Rule 1014(b) Stay should be modified prior to ruling on the venue motion under Rule 1014(b).

21. Nonetheless, it is clear from the underlying purpose of Rule 1014(b) that the Rule 1014(b) Stay should only be lifted under extraordinary circumstances. As explained by Collier on Bankruptcy, Rule 1014(b) is intended "to avoid any precipitous or detrimental action in another district." 9 Collier on Bankruptcy ¶ 1014.04; see also In re Proven Methods Seminars, LLC, No. 08-28469, 2008 WL 5640096, at *4 (Bankr. S.D. Fla. Dec. 15, 2008) (holding that Rule 1014(b) did not apply because no change of venue motion had been filed, but nevertheless anticipating a Rule 1014(b) motion and granting relief sought in second proceeding "only to the extent necessary to avoid irreparable harm to the Debtor"). Accordingly, the Rule 1014(b) Stay should be lifted or modified only where the party opposing such stay demonstrates extraordinary circumstances that would result in a tangible and imminent harm absent modification of such stay. Here, Vitro has failed to offer any evidence of an emergency that justifies such a modification.

**A. Vitro Has Provided No Evidence of Imminent Harm**

22. Vitro has failed to identify any basis for waiving the Rule 1014(b) Stay, because it has provided no evidence of an emergency that is likely to cause Vitro harm. First, Vitro has represented to this Court that Vitro has **no assets** in New York or the United States. Emergency Motion ¶ 11 ("Vitro SAB has no assets in New York (or anywhere else in the United States)"). Vitro alleges that it will be harmed by the Rule 1014(b) Stay, but it has not identified, let alone submitted to the Court, any evidence suggesting that a specific harm will precipitously

befall it or its estate absent modification of the Rule 1014(b) Stay.  The only alleged "harm" that

Vitro claims is the speculative possibility of "further actions similar to the New York Actions"

brought individually by certain members of the Ad Hoc Noteholder Group in New York state

court seeking attachment orders.  But with allegedly no assets in the United States, Vitro's

position is that there is absolutely nothing for such creditors to attach.  Furthermore, Vitro has

not identified a single other creditor who has filed or even will likely file a similar action.

Having presented no evidence of harm or probable harm—only speculation and conjecture—

Vitro has failed to establish any cause for modifying the Rule 1014(b) Stay.  Similarly, when the

Petitioning Creditors sought extraordinary relief pursuant to section 303(f) of the Bankruptcy

Code (which contains similar discretionary language "except to the extent that the court orders

otherwise") to impose the restrictions of section 363 of the Bankruptcy Code on the Debtors'

conduct during the gap period in the Cases, this Court stressed the need for evidentiary support

with respect to the alleged harms that might occur absent granting the relief sought.  <u>See</u> Hr'g Tr.

7:17-25 (Nov. 24, 2010)[3] (denying Petitioning Creditors request for relief under section 303(f)

and finding lack of evidentiary support of the relief sought).  Accordingly, the Chapter 15 Case

should be stayed until this Court rules on the Petitioning Creditor's Venue Motion.

23.     Moreover, assuming any emergency warranting stay modification actually

exists, that "emergency" was created by Vitro itself.  As explained in the Preliminary Objection,

counsel to the Petitioning Creditors informed Vitro's counsel that they would file the Venue

Motion immediately with this Court if Vitro filed a chapter 11 petition in any court other than the

Northern District of Texas and that Rule 1014(b) would stay those proceedings.  But Vitro went

ahead and commenced the Chapter 15 Case anyway.  Vitro cannot now possibly argue that they

---

[3]     A copy of the relevant portion of the transcript of the November 24, 2010 hearing is attached hereto as Exhibit C.

are subjected to an "emergency" that it should not have expected or for which it should have been prepared to manage. Had Vitro simply filed a chapter 15 petition in Texas, no stay modification would be necessary, and Vitro could have sought relief directly from this Court. Indeed, Vitro has provided no explanation as to why the Chapter 15 Cases (and any relief Vitro seeks in connection therewith) could not proceed in this Court as opposed to the New York Bankruptcy Court.

### B. Vitro Has Provided No Evidence of the Relief it Will Seek

24.     In addition to the reasons discussed above, the Court should also deny the Emergency Motion because modifying the Rule 1014(b) Stay could be detrimental to the current Cases before this Court. Notably, Vitro has not articulated with any specificity what relief it would seek in the New York Bankruptcy Court if this Court were to waive the stay. Vitro has not filed its adversary papers under section 1519 and 105(a) of the Bankruptcy Code, nor has it even provided them to the Noteholders upon request of counsel. See Emails between John Cunningham and Andrew Leblanc, dated December 16 and 18, 2010, attached hereto as Exhibit D. As such, the Court has no way of evaluating Vitro's requested relief and its potential effects on the Cases presently before it. Without notice of the relief that Vitro seeks, the Court cannot determine whether modifying the Rule 1014(b) Stay will have any overlap or impact on the Court's rulings in these Cases.

25.     Moreover, the nature of the relief that Vitro apparently intends to seek from the New York Bankruptcy Court is troubling. First, Vitro has stated both in its papers and on the record that it intends to seek preliminary injunctive relief that not only protects Vitro's assets (none of which, it claims, are in the United States) but that also extends to Vitro's non-debtor affiliates and their assets—entities for which no insolvency proceedings are pending in

any jurisdiction. Foreign Rep. Decl. ¶ 54.[4] Second, Vitro implies that the injunctive relief it intends to seek will apply only to the Noteholders, <u>see</u> Foreign Rep. Decl. ¶ 54., and not a plenary stay (<u>e.g.</u>, akin to the automatic stay under section 362 of the Bankruptcy Code), which would apply to all parties in interest. Again, without the benefit of Vitro's proposed injunctive pleadings, it is impossible to determine exactly what relief Vitro will seek. Yet, it would appear that Vitro wants to full benefits of an automatic stay without any of its burdens.

26. Finally, the Debtors have argued previously before this Court that the Court must consider issues of comity and defer to proceedings in Mexico. <u>See</u> Objection of Alleged Debtors to Motion of Dissident Minority Noteholders for Entry of Order Directing Examination Pursuant to Federal Rule of Bankruptcy Procedure 2004 [Dkt. No. 40] ¶ 22; Answer [Dkt. No. 70] ¶ 8; Joint Pre-Conference Statement of the Petitioning Creditors and Alleged Debtors [Dkt. No. 90] ¶ 36. These issues with respect to comity—raised by the Debtors—all relate directly to Vitro and the Voluntary Concurso. Now Vitro is seeking to raise these same comity issues in yet another forum in the New York Bankruptcy Court. This situation is precisely what Rule 1014(b) is designed to deal with and seeks to prevent—the potential for inconsistent rulings on the same or substantially similar issues in the same or related cases. Where the Debtors have already presented these issues to this Court, they cannot now engage in forum shopping by seeking to have another court adjudicate the issue. <u>See</u> <u>Cole v. Edwards</u>, No. 03-5214, 2004 WL 1874970, at *3-4 (S.D.N.Y. Aug. 13, 2004).

## II. This Court is the Proper Venue in Which the Proceedings Should Continue

---

[4] Foreign Rep. Decl. shall mean the Declaration of Alejandro Francisco Sánchez-Mujica, as Foreign Representative of Vitro, S.A.B. de C.V., (I) In Support of Verified Petition For Recognition of Foreign Main Proceeding And Request For Related Relief And (II) In Compliance With 11 U.S.C. § 1515 And Rule 1007(a)(4) of Federal Rules of Bankruptcy Procedure, which was filed in the Chapter 15 Case.

27.     Rule 1014(b) states that the court should determine the proper district "in the interest of justice or for the convenience of the parties." Id.  Courts in this district have identified a number of factors for a court to consider in deciding whether to transfer venue "for the convenience of the parties" under Rule 1014(b), including:  "(1) The proximity of creditors of every kind to the Court; (2) The proximity of the bankrupt (debtor) to the Court; (3) The proximity of the witnesses necessary to the administration of the estate; (4) The location of the assets; (5) The economic administration of the estate; [and] (6) The necessity for ancillary administration if bankruptcy should result."[5] In re Commonwealth Oil Refining Co., Inc., 596 F.2d 1239, 1247 (5th Cir. 1979) [hereinafter "CORCO"]; see also In re Interlink Home Health Care, Inc., 283 B.R. 429, 440 (N.D. Tex. 2002) (evaluating the CORCO factors and transferring venue from the District of Delaware to the Northern District of Texas); In re Consolidated Companies, 113 B.R. 269, 274 (N.D. Tex. 1989) (transferring venue from the Northern District of Georgia to the Northern District of Texas based on CORCO factors).

28.     The balance of the CORCO factors clearly weighs in favor of transferring the Chapter 15 Case to this Court.  Weighing most heavily among these is the economic administration of the estate, which is the most important of the factors.  CORCO, 596 F.2d at 1247.  Already, only a month after the Chapter 11 Petitions were filed, this Court has developed extensive familiarity with Vitro, the Debtors, and the issues raised in these Cases and the Chapter 15 Case.  There already are reams of evidence—in the form of thousands of pages of briefs and exhibits submitted, not to mention hours of arguments made—indicating that the Chapter 15 Case would be administered most economically in this Court.  The docket for the Cases currently

---

[5]     The sixth factor is often given little weight.  See CORCO, 596 F.2d at 1248 (describing it as "an illogical basis upon which to predicate transfer").

includes eighty-five entries, including at least five substantive motions and objections or responses thereto.  See, e.g., Dkt. Nos. 5, 19, 22, 76, and 81.

29.     In the interests of promoting judicial economy, it makes no sense whatsoever to maintain these Cases and the Chapter 15 Case in two different jurisdictions when this Court is already familiar with the parties and issues involved.  In re Raytech, 222 B.R. at 26 (noting that the court to which the case was transferred had "spent innumerable hours on innumerable issues in this case, including the debtor's relationship to the Raymark entities"); see also In re Harnischfeger Indus., Inc., 246 B.R. 421, 440-441 (Bankr. N.D. Ala. 2000) (retaining jurisdiction because "[a]s a result of having read all of the state court pleadings in preparation for the hearing on this motion and having heard the evidence at this hearing, th[e] [c]ourt ha[d] grown very familiar with the causes of action in this adversary proceeding and many of the alleged facts."); Interlink Home Health Care, 283 B.R. at 441 (transferring case where issues in second proceeding were "intertwined" with the first).  In Raytech, the court held that various entities in bankruptcy proceedings in Utah were affiliates of entities before the bankruptcy court in Connecticut.  The court based its holding on the purpose of Rule 1014(b), which it described as "intended to avoid inefficiencies and waste of judicial and other resources."  Raytech, 222 B.R. at 25.  It concluded that this purpose would be frustrated by a contrary holding because "the overlap of creditors and issues in the [two cases] is so pervasive that, in the absence of joint administration, each court will have to monitor the activities of the other and try to accommodate the needs of the other."  Id. at 25.  Allowing the Chapter 15 Case to proceed in New York would lead to the same result.

30.     By contrast, there are no facts suggesting that hearing the Chapter 15 Case in New York would provide for a more economic administration of the estate than hearing it in

Texas.  The Chapter 15 Case – which, as discussed further below, may not even be properly filed – has in any event only just been commenced, and nothing of substance has occurred in that proceeding.  See In re Consolidated Companies, 113 B.R. at 276 (concluding that there was no evidence that it would be more economical to administer case in jurisdiction where "[n]o substantive issues have been decided or are pending").  Additionally, Vitro admittedly has no assets or operations in New York, a fact which, by itself, may be enough to warrant transfer to Texas in this matter.  For example, in Raytech, the court held that it did not even need to consider all of the CORCO factors, and instead it could transfer a proceeding in Utah to Connecticut because the entities in the Utah proceeding had "at most minimal" contacts with Utah – they "conduct[ed] no business, own[ed] no property, and ha[d] no employees in Utah."[6] In re Raytech, 222 B.R. at 26.  The same is true here and justifies transferring the case from New York to Texas.

31.     Perhaps the best argument that Vitro could muster on this factor is that counsel is located in New York, but that argument has been rejected.  In re Seton Chase Assoc., Inc., 141 B.R. 2, 6 (Bankr. E.D.N.Y. 1992); see also Interlink Home Health Care, 283 B.R. at 442 (rejecting argument that parties' lawyers were closer to the venue from which the case would be transferred and noting that a party opposing transfer "clearly is familiar with lawyers in the Dallas-Fort Worth area").  Moreover, both the Petitioning Creditors and the Debtors and Vitro already have engaged counsel in Texas.

---

[6]     Although the court in Raytech found that one point of contact between the entities in the Utah proceeding and the state of Connecticut was litigation against the entities, that litigation is not at all comparable to the litigation against Vitro in New York state court.  In Raytech the claims at issue arose out of alleged pollution to real property in Connecticut and many of the relevant witnesses were located in Connecticut.  222 B.R. at 26.  Neither is true in this case.

32.     The other <u>CORCO</u> factors also mandate transferring the Chapter 15 Case to Texas.[7]  For example, with respect to the location of the creditors, the Petitioning Creditors and other members of the Ad Hoc Noteholder Group, who together possess well over half of the outstanding Vitro Notes, have indicated their preference for this jurisdiction by filing the Chapter 11 Petitions in this Court.  Texas is likewise considerably closer to the locations of Vitro (Mexico), the Debtors, who operate in the Southern United States, including Texas, and most non-Debtor Affiliates, the majority of which are located in Mexico and Latin America.  Indeed, as the Debtors have conceded to this Court, most of the business done in the U.S. by Vitro and its non-Debtor affiliates is through the Debtors, which act as their distributors.  <u>See, e.g.</u>, Hr'g Tr. 49:22-25—50:1 (Nov. 23, 2010) (counsel for the Debtors explaining that the Debtors are the "end users or end distributors" of their Mexican affiliates' glass products).  Similarly, any employees or officers of Vitro who are called as witnesses will likely come from Dallas/Mexico. Forth Worth is a much more convenient location from a travel perspective for such witnesses. With respect to assets, Vitro claims that it has no assets at all in the United States, so this factor affords Vitro no basis to oppose a transfer.  Additionally, Vitro has been represented by the same counsel in this Court for the duration of the Cases, and the Debtors have never contested venue in this Court.  For these reasons, the Chapter 15 Case ultimately should be transferred to this Court.[8]

---

[7]      Petitioning Creditors reserve all rights to seek discovery regarding any factors relevant to the Court's evaluation of the Cases under Rule 1014(b).

[8] Vitro erroneously implies that the Chapter 11 Petitions will be dismissed by asserting that the Debtors "continue to pay their debts as they become due in the ordinary course."  Emergency Motion ¶ 17; <u>see also</u> Answer [Docket No. 70], n. 1 (purporting to reserve the right to seek dismissal of the Chapter 11 Petitions).  However, no motion to dismiss has been filed by the Debtors and, as the recently filed Joint Pre-Conference Statement [Docket No. 91] indicates, the parties are contemplating and preparing for trial on the Chapter 11 Petitions.

## III. The Chapter 15 Case Will Likely be Dismissed

33. Finally, the Emergency Motion should be denied because of serious deficiencies with the Chapter 15 Case. The Chapter 15 Case is likely to be dismissed because Vitro is not a debtor in the foreign proceeding for which Vitro has not established that it meets the requirements for Chapter 15. Section 1515 of the Bankruptcy Code sets forth the requirements for filing a petition for recognition. See 11 U.S.C. § 1515. The Chapter 15 Petition filed by Alejandro Francisco Sánchez-Mujica (the "Petitioner"), as the purportedly authorized foreign representative of Vitro, falls woefully short of these requirements.

34. First, the Petitioner asks the court to recognize Vitro's mere filing of a voluntary petition for *concurso* in Mexico as a foreign proceeding based upon the Petitioner's misguided "expectation" that the Mexican court will ultimately enter an order declaring a *concurso* proceeding on the basis of the voluntary petition. In fact, the Mexican court has <u>not</u> admitted the voluntary petition filed by Vitro, although it has already admitted the Involuntary Concurso against Vitro filed by certain of the Petitioning Creditors. See Ex. A (Involuntary *Concurso* Order). It is uncertain as to whether the Mexican court will ever admit Vitro's voluntary petition, let alone enter an order declaring a *concurso* proceeding effective on the basis of such petition.

35. Moreover, a "foreign proceeding" requires "a statutory framework that constrains a company's action and that regulates final distribution of a company's assets." In re Betcorp Ltd., 400 B.R. 266, 277 (Bankr. D. Nev. 2009). The mere filing of the voluntary petition in Mexico has no effect on the business or affairs of Vitro or the rights of its creditors under Mexican law and accordingly no "foreign proceeding" has yet commenced. Under chapter 15's predecessor legislation a mere application for reorganization was not considered sufficient

to constitute a "foreign proceeding", <u>In re Master Home Furniture Co. Ltd.</u>, 261 B.R. 671, 677 (Bankr. C.D. Cal. 2001), and chapter 15 requires an even more rigid approach, <u>In re Basis Yield Alpha Fund (Master)</u>, 381 B.R. 37, 46 (Bankr. S.D.N.Y. 2008). Further, the purpose of chapter 15 is to promote comity and "provide predictability to the financial community," <u>id.</u>, neither of which can be achieved by the Court recognizing imagined foreign proceedings before the appropriate foreign court has the opportunity to determine whether to open such proceeding.

36.     Additionally, courts defer to the laws of the foreign jurisdiction in determining the party authorized to serve as a foreign representative, <u>In re Master Home Furniture Co.</u>, 261 B.R. at 677, and Vitro has failed to inform the Court that applicable Mexican law specifically designates one of three parties to serve as a foreign representative – the inspector, the *conciliador* or the receiver. Mr. Sanchez-Mujica (designated by Vitro, not the Mexican court, as the "foreign representative") is none of these; rather, he is the Executive Vice President and General Counsel of Vitro. Moreover, the Petitioner does not satisfy the requirement that a foreign representative must be appointed by the foreign court presiding over the alleged foreign proceeding. <u>In re Tradex Swiss AG</u>, 384 B.R. 34, 41 n.12 (Bankr. D. Mass. 2008).

37.     Finally, because no foreign proceeding exists and the Petitioner has not been appointed as a foreign representative, the Petitioner has not and cannot satisfy the evidentiary requirements of section 1515(b) of the Bankruptcy Code to provide a copy of the decision or certificate from the foreign court evidencing the commencement of the foreign proceedings and appointment of the foreign representative. <u>In re Betcorp</u>, 400 B.R. at 278.

38.     In short, the Chapter 15 Petition itself is defective because it (i) is premised on a non-existent foreign proceeding, (ii) was not filed by an appropriate foreign

representative and (iii) fails to attach the documentary evidence required by section 1515(b) of the Bankruptcy Code.  After this Court's ruling on the Venue Motion, the Petitioning Creditors intend to file a motion to dismiss the Chapter 15 Case in substantially the form attached hereto as Exhibit E.

WHEREFORE, Petitioning Creditors respectfully request this Court to deny the

Emergency Motion.


Dated: Fort Worth, Texas
      December 18, 2010

                    Jeff P. Prostok
                    State Bar No.  16352500
                    Lynda L. Lankford
                    State Bar No.  11935020
                    FORSHEY  & PROSTOK LLP
                    777 Main St., Suite 1290
                    Ft. Worth, TX  76102
                    (817) 877-8855


                    By /s/ Jeff P. Prostok
                       Jeff P. Prostok

                       -and-

                    Thomas E Lauria
                    State Bar No. 11998025
                    J. Christopher Shore (admitted pro hac vice)
                    John K. Cunningham (admitted pro hac vice)
                    Richard Kebrdle (admitted pro hac vice)
                    WHITE & CASE LLP
                    1155 Avenue of the Americas
                    New York, NY 10036
                    (212) 819-8200

                    ATTORNEYS FOR THE PETITIONING
                    CREDITORS AND THE AD HOC GROUP
                    OF VITRO NOTEHOLDERS

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document was served via ECF electronic Notice, if available, and upon the parties listed below via email, on December 18, 2010.

Louis R. Strubeck, Jr.
William R. Greendyke
**FULBRIGHT & JAWORSKI L.L.P.**
2200 Ross Avenue, Suite 2800
Dallas, Texas 75201
Email: lstrubeck@fulbright.com
          wgreendyke@fulbright.com

Dennis F. Dunne
Risa M. Rosenberg
**MILBANK, TWEED, HADLEY & MCCLOY LLP**
1 Chase Manhattan Plaza
New York, New York 10005-1413
Email: ddunne@milbank.com
          rrosenberg@milbank.com

Andrew M. Leblanc
**MILBANK, TWEED, HADLEY & MCCLOY LLP**
1850 K Street, NW, Suite 1100
Washington, DC 20006
Email: aleblanc@milbank.com

/s/ Jeff P. Prostok
Jeff P. Prostok