Dennis F. Dunne (admitted *pro hac vice*)
Risa M. Rosenberg (admitted *pro hac vice*)
**MILBANK, TWEED, HADLEY & MᶜCLOY LLP**
1 Chase Manhattan Plaza
New York, NY 10005-1413
Tel:  (212) 530-5000
Fax:  (212) 530-5219
ddunne@milbank.com
rrosenberg@milbank.com

Andrew M. Leblanc (admitted *pro hac vice*)
**MILBANK, TWEED, HADLEY & MᶜCLOY LLP**
1850 K Street, NW, Suite 1100
Washington, DC 20006
Tel:  (202) 835-7500
Fax:  (202) 263-7586
aleblanc@milbank.com

Louis R. Strubeck, Jr.
State Bar No. (19425600)
William R. Greendyke
State Bar No. (08390450)
**FULBRIGHT & JAWORSKI L.L.P.**
2200 Ross Avenue, Suite 2800
Dallas, Texas 75201
Tel:  (214) 855-8000
Fax:  (214) 855-8200
lstrubeck@fulbright.com
wgreendyke@fulbright.com

**ATTORNEYS FOR ALLEGED DEBTORS**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## FORT WORTH DIVISION

| | | |
|---|---|---|
| In re: | § § | Involuntary Chapter 11 |
| VITRO ASSET CORP., <u>et al.</u>, | § § | Case No. 10-47470-rfn-11 |
| Alleged Debtors.[1] | § § | Jointly Administered |
| | § | |

### ALLEGED DEBTORS' (I) OBJECTION TO MOTION OF PETITIONING CREDITORS FOR DETERMINATION THAT CERTAIN BANKRUPTCY CASES SHOULD PROCEED IN THE UNITED STATES BANKRUPTCY COURT FOR THE NORTHERN DISTRICT OF TEXAS AND (II) CROSS-MOTION FOR TRANSFER OF VENUE OF INVOLUNTARY CASES TO THE UNITED STATES BANKRUPTCY COURT FOR THE SOUTHERN DISTRICT OF NEW YORK

---

[1]     The Alleged Debtors are:  Vitro Asset Corp. (f/k/a American Asset Holdings Corp.), Vitro Chemicals, Fibers & Mining, LLC, Vitro America, LLC, Troper Services, Inc., Super Sky Products, Inc., Super Sky International, In, VVP Holdings, LLC, Amsilco Holdings, Inc., B.B.O. Holdings, Inc., Binswanger Glass Company (f/k/a Troper Inc.), Crisa Corporation, VVP Finance Corporation, VVP Auto Glass, Inc., V-MX Holdings, LLC (f/k/a Crisa Holdings Corp.), and Vitro Packaging, LLC.

TO THE HONORABLE RUSSELL F. NELMS,
UNITED STATES BANKRUPTCY JUDGE:

The alleged debtors (collectively, the "Alleged Debtors") in the above-captioned involuntary chapter 11 cases (the "Involuntary Cases") hereby submit their (i) objection (the "Objection") to the motion (as supplemented, the "Motion to Transfer Venue") [Docket Nos. 76 and 80] of Knightland Master Fund, L.P., Brookville Horizons Fund, L.P., Davidson Kempner Distressed Opportunities Fund L.P. and Lord Abbett Bond-Debenture Fund, Inc. (collectively, the "Dissident Minority Noteholders") for determination that the Chapter 15 Case (as defined below) should proceed in this Court pursuant to Rule 1014(b) of the Federal Rules of Bankruptcy Procedure (as amended, the "Bankruptcy Rules"), and (ii) cross-motion (the "Cross-Motion"), pursuant to 28 U.S.C. § 1412 and Bankruptcy Rule 1014(b), for an order transferring the venue of the Involuntary Cases to the Bankruptcy Court for the Southern District of New York (the "New York Bankruptcy Court") where the Chapter 15 Case is pending.  In support of the Objection and Cross-Motion, the Alleged Debtors respectfully state as follows:

**PRELIMINARY STATEMENT**

1.       The Motion to Transfer Venue is yet another step in a calculated scheme designed by the members of the Steering Committee to frustrate, if not derail, the efforts of Vitro SAB, the parent company of the Alleged Debtors, to consummate a prepackaged consensual restructuring under Mexican law.  This scheme began with the improper and unjustifiable filing by the Dissident Minority Noteholders of the Involuntary Cases, and continued when, beginning on December 2, 2010, two other members of the Steering Committee commenced actions in New York state court against Vitro SAB and its foreign subsidiaries, in which they obtained *ex parte*

orders of attachment, which interfered with Vitro SAB's ability to complete a tender offer and an exchange offer then underway.

2.      When the New York Actions were commenced, the members of the Steering Committee were well aware of Vitro SAB's intention to file a chapter 15 case in the United States for recognition of its Mexican restructuring proceeding and, by commencing litigation in New York, they compelled Vitro SAB to file such case in the New York Bankruptcy Court**.** Now, having created the existing situation, which requires Vitro to combat meritless legal proceedings in both New York and Texas, the members of the Steering Committee attempt further mischief by asking this Court to transfer venue of the Chapter 15 Case to Texas.

3.      However, the Dissident Minority Noteholders provide absolutely no evidence, as required by Bankruptcy Rule 1014(b) and 28 U.S.C. § 1412, to demonstrate why such transfer would be in the interests of justice or for the convenience of any party in interest.  To the contrary, as discussed herein, all available evidence demonstrates that, not only should the Chapter 15 Case remain in New York, but the Involuntary Cases—to the extent they are allowed to proceed at all—should proceed in the New York Bankruptcy Court.  Any other result would only countenance the forum-shopping and gamesmanship engaged in by the members of the Steering Committee and would risk inconsistent judgments with respect to the same legal issues in Mexico, Texas, and New York resulting in disparate treatment of similarly situated creditors.

4.      Accordingly, for the convenience of the parties and in the interests of justice, the Alleged Debtors respectfully request that (i) the Motion to Transfer Venue be denied, and (ii) the venue of the Involuntary Cases be transferred to the New York Bankruptcy Court.

## BACKGROUND

5.      The Alleged Debtors are wholly-owned indirect subsidiaries of Vitro, S.A.B. de C.V. ("Vitro SAB"), a corporation organized under the laws of Mexico, which is a holding company for an international enterprise (together with Vitro SAB, "Vitro") that manufactures glass containers and flat glass. Vitro has manufacturing facilities in 11 countries and distribution centers throughout the Americas and Europe; it exports its products to more than 50 countries worldwide. Vitro's headquarters and primary operations are located in Mexico, and approximately 89% of Vitro's employees are located outside the United States.

6.      Vitro SAB is the issuer of an aggregate principal outstanding amount of (i) $216 million of 11.75% Senior Notes due 2013, (ii) $300 million of 8.625% Senior Notes due 2012, and (iii) $700 million of 9.125% Senior Notes due 2017 (collectively, the "Old Notes"). Each issuance of the Old Notes is governed by an indenture (including all supplements, collectively, the "Indentures"). Pursuant to the terms of the Indentures, the Old Notes were guaranteed (the "Old Guarantees"), on an unsecured basis, by more than fifty of Vitro SAB's wholly-owned direct and indirect subsidiaries, including each of the Alleged Debtors (in such capacities, the "Guarantors"). Each Indenture (and, thus, each Old Guarantee) is governed by New York law and contains a forum selection clause specifying New York as an appropriate location for any legal proceeding relating to the Old Notes or the Old Guarantees.

7.      As a result of certain defaults with respect to various debt obligations, in February 2009, Vitro SAB announced its intention to restructure all of such obligations, including the Old Notes (collectively, the "Restructured Debt"), and engaged in active negotiations with the various holders of the Restructured Debt, including certain holders of the Old Notes (the "Steering Committee").

8.      Vitro SAB's restructuring proposal resulting from these negotiations (the "*Concurso* Plan") was to be effectuated through an exchange offer and consent solicitation followed by a prepackaged voluntary judicial reorganization proceeding in Mexico. Accordingly, as the first step, on November 1, 2010, Vitro SAB launched two alternative offers to the holders of the Old Notes: a tender offer to purchase the Old Notes (the "Tender Offer") and an exchange offer and solicitation of consents (the "Exchange Offer and Consent Solicitation" and, together with the Tender Offer, the "Offers") to an in-court restructuring under the *Ley de Concursos Mercantiles* (the "Mexican Business Reorganization Act").  Concurrently, Vitro SAB also sought consents to the *Concurso* Plan from the other holders of Restructured Debt.[1]

9.      Under the *Concurso* Plan, all of the Restructured Debt is to be exchanged for new consideration.  Specifically, the Old Notes are to be exchanged for new notes issued by Vitro SAB (the "New Notes") and some additional consideration, including cash.  While the *Concurso* Plan provides for the cancelation of the Old Guarantees, it provides for the issuance of new guarantees with respect to the New Notes by 65 subsidiaries of Vitro SAB, including the Alleged Debtors.

10.     On November 17, 2010—in the middle of the pending Offers—the Dissident Minority Noteholders, which are members of the Steering Committee, and which hold in the aggregate approximately $75 million, or a mere 6%, of the $1.2 billion outstanding Old Notes,[2] filed the involuntary chapter 11 petitions against the Alleged Debtors, commencing these Involuntary Cases.

---

[1]     Vitro SAB has been advised that, based on the results of the Offers, it will have obtained sufficient consents, together with the consents obtained through lock-up agreements, and with eligible intercompany obligations, for the *Concurso* Plan to be approved in compliance with the Mexican Business Reorganization Act.

[2]     See Involuntary Petition [Docket No. 1].

11. Two weeks later, while the Offers were still pending, certain other members of the Steering Committee commenced two law suits (the "New York Actions")[3] against Vitro SAB and 49 Guarantors (other than the Alleged Debtors) in the Supreme Court of the State of New York (the "New York State Court"), alleging breach of contract and seeking payment of the accelerated principal and accrued interest on their Old Notes. In their respective New York Actions, (i) Aurelius has alleged that it holds, in the aggregate, more than $206 million in face amount of Old Notes, and (ii) Elliott has alleged that it holds, in the aggregate, more than $85 million in face amount of Old Notes.

12. In each of the New York Actions, the plaintiffs obtained *ex parte* orders of attachment (the "Attachment Orders") with respect to any property of Vitro SAB and the other defendants located in the State of New York sufficient to secure the damages claims asserted in the respective New York Actions.[4] As a direct result of the Attachment Orders, the Offers—key steps in Vitro SAB's reorganization efforts—were disrupted[5] until, after nearly two weeks of expedited litigation before the New York State Court and the New York Appellate Division, an

---

[3] The New York Actions were commenced by (a) three funds that, on information and belief, are managed or controlled by the Steering Committee member Aurelius Capital Management, LP ("Aurelius"), and (b) two funds that, on information and belief, are managed or controlled by the Steering Committee member Elliott Management Corp. ("Elliott").

[4] It is symptomatic of the way the members of the Steering Committee have been conducting themselves with respect to Vitro's restructuring that neither Aurelius nor Elliot found it necessary, when applying for the *ex parte* Attachment Orders, to inform the New York State Court of the pending Offers, although the assets they were seeking to attach were vital to the consummation of both Offers. Moreover, when the New York State Court expressed its disappointment with such glaring omissions, counsel for Aurelius stated that the Offers were "not on our radar screen as part of the attachment process until after the order was issued"—notwithstanding Vitro SAB's public disclosure of the Offers on November 1, 2010, more than a month before the attachment was sought, and the Steering Committee's multiple press releases in the interim specifically addressing the Offers. (See December 16, 2010 Tr. 25:21-26:3, attached as Exhibit 20 to Alleged Debtors' (I) Witness and Exhibit List and (II) Exhibits (the "Exhibit List") [Docket No. 95], filed under seal pursuant to this Court's Order [Docket No. 99].)

[5] Specifically, D.F. King & Co., Inc. ("D.F. King"), the Depository for the Tender Offer and Information and Exchange Agent for the Exchange Offer and Consent Solicitation, refused to take certain steps necessary to effectuate the transfer of the Old Notes tendered in the Tender Offer or disburse the Consent Payment to those holders of the Old Notes that consented to the *Concurso* Plan without further direction from the New York State Court.

order was entered clarifying that the Orders of Attachment did not apply to the Old Notes tendered or exchanged as part of the Offers.[6]

13.     On December 13, 2010, Vitro SAB commenced a voluntary judicial reorganization proceeding (the "Voluntary Mexican Proceeding") under the Mexican Business Reorganization Act by filing its voluntary petition (the "Voluntary Petition") and prepackaged *Concurso* Plan in the Federal District Court for Civil and Labor Matters for the State of Nuevo León (the "District Court of Nuevo León").[7]  On December 14, 2010, Vitro SAB also commenced a voluntary case under chapter 15 of the Bankruptcy Code (the "Chapter 15 Case") in the New York Bankruptcy Court seeking recognition of the Voluntary Mexican Proceeding as the "foreign main proceeding" under sections 1515 and 1517 of the Bankruptcy Code.

14.     On that same date, the Dissident Minority Noteholders filed the Motion to Transfer Venue.  While no return date was obtained by the Dissident Minority Noteholders for such motion, Bankruptcy Rule 1014(b) imposed an immediate stay on all proceedings in the Chapter 15 Case pending the Court's consideration of the Motion to Transfer Venue. Accordingly, the Alleged Debtors and Vitro SAB moved on an emergency basis seeking a waiver of the stay in order to be in the position to protect Vitro SAB and the other Guarantors from the continuation of the New York Actions, as well as the commencement of similar actions by other creditors.

---

[6]     While such order was issued by the New York State Court on December 16, 2010, before it took effect, Aurelius appealed the order to the New York Appellate Division and requested that the order be stayed while the appeal was pending.  On December 21, 2010, the New York Appellate Division denied the stay, and New York State Court's order took effect.  Subsequently, D.F. King took the requisite actions and the Offers were completed.

[7]     On December 20, 2010, the District Court of Nuevo León requested additional information concerning the Voluntary Petition, which Vitro SAB submitted on December 22, 2010.  On December 27, 2010, the District Court of Nuevo León issued a ruling admitting the Voluntary Petition for further proceedings, having determined that that Voluntary Mexican Petition complied with the *prima facie* requirements for *concurso mercantil* set forth in Article 339 of the Mexican Business Reorganization Act.

15.     The Court agreed with Vitro SAB and the Alleged Debtors that the requested lifting of the stay was necessary to allow Vitro SAB to seek certain limited relief in the Chapter 15 Case to protect its reorganization efforts and, on December 22, 2010, entered an order to such effect.  Since that time, counsel for Vitro SAB and the Steering Committee have engaged in discussions regarding appropriate injunctive relief and Vitro SAB is hopeful that it will be able to present the New York Bankruptcy Court with an agreed form of order.

## OBJECTION AND CROSS-MOTION

16.     The Alleged Debtors do not question this Court's authority to determine the most appropriate venue for both the Involuntary Cases and the Chapter 15 Case.  They respectfully submit, however, that, rather than transferring the Chapter 15 Case to this Court, the interests of justice and the convenience of the parties will be better served by the transfer of the Involuntary Cases to the New York Bankruptcy Court.

17.     Bankruptcy Rule 1014(b), under which the Dissident Minority Noteholders are moving, provides in relevant part:

> If petitions commencing cases under the [Bankruptcy Code] are filed in different districts by or against . . . a debtor and an affiliate, on motion filed in the district in which the petition filed first is pending and after hearing on notice . . . the court may determine, in the interests of justice or for the convenience of the parties, the district or districts in which the cases should proceed. . . .

Fed. R. Bankr. P. 1014(b).

18.     The Alleged Debtors do not dispute that the Involuntary Cases were "filed first" and that, accordingly, this Court is empowered to decide whether to (i) transfer venue of the Chapter 15 Case to this Court, where the Involuntary Cases are pending, (ii) transfer venue of the Involuntary Cases to the New York Bankruptcy Court, where the Chapter 15 Case is pending, or (iii) leave each case in the court where it is currently pending.

19.     In determining which of the above courses of action to take, the Court must

determine which of them would serve the interests of justice and/or the convenience of the

parties.  <u>See</u> 28 U.S.C. § 1412; Fed. R. Bankr. P. 1014(b); <u>see also</u> <u>In re Consolidated Cos.</u>, 113

B.R. 269, 274 (Bankr. N.D. Tex. 1989) ("On motion and after a hearing on notice, this court may

determine, in the interests of justice or for the convenience of the parties, the district in which the

case should proceed.").  In making this determination, courts generally consider a variety of

factors, including (a) the proximity of creditors to the court, (b) the proximity of the debtor to the

court, (c) the proximity of the witnesses necessary to the administration of the estate, (d) the

location of the assets, (e) the economic administration of the estate, and (f) the necessity for the

ancillary administration if liquidation should result.  <u>See</u> <u>In re Commonwealth Oil Refining Co.</u>,

596 F.2d 1239, 1247 (5th Cir. 1079), <u>cert. denied</u>, 444 U.S. 1045 (1980); <u>accord</u> <u>In re</u>

<u>Consolidated Cos.</u>, 113 B.R. at 274 (applying <u>Commonwealth</u> factors).

20.     The party seeking to transfer venue bears the burden of proof with respect to all of

the above factors, which must be carried out by the preponderance of the evidence.  <u>See, e.g.</u>,

<u>Norton v. Encompass Servs. Corp.</u>, 301 B.R. 836, 839 (S.D. Tex. 2003) ("The party seeking to

transfer venue bears the burden of showing by a preponderance of the evidence that transfer

would be appropriate." (citing <u>In re Manville Forest Prods. Corp.</u>, 896 F.2d 1384, 1390 (2d Cir.

1990)).

21.     An analysis of the <u>Commonwealth</u> factors in the circumstances of these cases

leads to the inescapable conclusion that (i) the Chapter 15 Case should remain in the New York

Bankruptcy Court and not be transferred to this Court, and (ii) the Involuntary Cases should be

transferred to the New York Bankruptcy Court.

## I.  OBJECTION TO MOTION TO TRANSFER VENUE

22.     For the purposes of determining whether the venue of the Chapter 15 Case should be transferred to this Court, the focus of the Court's inquiry should be the relationship (or rather the complete lack thereof) between the Chapter 15 Case (i.e., Vitro SAB) and Texas.  The Dissident Minority Noteholders fall woefully short of meeting their burden to demonstrate that the venue of the Chapter 15 Case should be transferred to this Court and, accordingly, the Motion to Transfer Venue should be denied.

### A.     Venue of Chapter 15 Case is Proper in New York

23.     As a threshold matter, it is indisputable that, despite the Dissident Minority Noteholders' assertions to the contrary, venue of the Chapter 15 Case was and continues to be proper in the New York Bankruptcy Court.  In fact, the New York Bankruptcy Court was the *only* court where venue was proper for the Chapter 15 Case at the time of its filing.

24.     Venue of cases under chapter 15 of the Bankruptcy Code is governed by 28 U.S.C. § 1410, which provides that:

> A case under chapter 15 . . . may be commenced in the district court of the United States for the district (1) in which the debtor has its principal place of business or principal assets in the United States; (2) if the debtor does not have a place of business or assets  in the United States, in which there is pending against the debtor an action or proceeding in a Federal or State court; or (3) in a case other than those specified in paragraph (1) or (2), in which venue will be consistent with the interests of justice and convenience of the parties, having regard to the relief sought by the foreign representative.

28 U.S.C. § 1410.

25.     In contrast, 28 U.S.C. § 1408(2), which enables a debtor to commence a case in a venue "in which there is pending a case under title 11 concerning [such debtor's] affiliate, general partner or partnership," is *expressly not applicable* to chapter 15 cases.  See 28 U.S.C. § 1408(2) ("Except as otherwise provided in section 1410 of this title . . . .").  Accordingly, venue

in this district for a chapter 15 case for Vitro SAB would *not* have been proper on the basis of the pendency of the Involuntary Cases.

26. Instead, Congress has mandated that New York was the ***sole*** proper venue for a chapter 15 case of Vitro SAB. Legislative history of 28 U.S.C. § 1410 clearly indicates that this statute should be read as a "hierarchy of choices," meaning that if a debtor has a principal place of business or principal assets in a particular venue, that debtor's chapter 15 petition ***must*** be filed in that venue; if that is not the case, but there is a lawsuit against pending a foreign debtor, such debtor ***must*** file its chapter 15 petition in the same venue. See H.R. Rep. No. 109-31, 109th Cong., 1st Sess. 119 (2005), ("The venue provisions for cases ancillary to foreign proceedings have been amended to provide a hierarchy of choices beginning with principal place of business in the United States, if any.").

27. As stated in Vitro SAB's verified chapter 15 petition, Vitro SAB has neither a place of business nor assets in the United States. (See Verified Petition ¶ 43, attached as Exhibit A to the Motion to Transfer Venue.) Accordingly, based on the mandatory provision of 28 U.S.C. § 1410 and the pendency of the New York Actions, Vitro SAB ***had no choice*** but to commence the Chapter 15 Case in the New York Bankruptcy Court. Any other venue for the Chapter 15 Case would have been improper and, if challenged, indefensible.

**B.      There is No Reason to Transfer Venue of the Chapter 15 Case to This Court**

28. The Dissident Minority Noteholders have failed to meet their burden to demonstrate that venue of the Chapter 15 Case should be transferred to this Court. In fact, the Dissident Minority Noteholders have offered ***no*** evidence whatsoever (let alone enough evidence to meet the "preponderance of the evidence" standard) to demonstrate that the transfer they are seeking is "in the interests of justice of for the convenience of the parties." That is not

surprising, because all the evidence indicates that the interests of justice and the convenience of the parties require that the venue of the Chapter 15 Case remains in New York. Although this Court could now transfer the properly venued Chapter 15 Case to itself, it should consider whether to do so in light of the fact that Congress has dictated a different venue for a case filed under these circumstances.

### (1) The Alleged Debtors Expect the Involuntary Cases to be Dismissed

29.     As the Alleged Debtors have previously informed the Court, and as will be discussed more fully in their forthcoming memorandum of law in opposition to the entry of an order for relief in the Involuntary Cases, they strongly believe that the Involuntary Cases were improperly filed and will be dismissed because the Dissident Minority Noteholders do not hold non-contingent, presently due claims against the Alleged Debtors that are not subject to a *bona fide* dispute. In addition, the Alleged Debtors are generally paying their debts as they come due. Clearly, if and when the Involuntary Cases are dismissed, there will be no basis for venue for the Chapter 15 Case in this Court whatsoever.

### (2) Chapter 15 Case Belongs in the New York Bankruptcy Court

30.     As discussed above, the Fifth Circuit has identified a list of six factors that should guide this Court in determining whether to transfer venue of a chapter 15 case: (1) the proximity of creditors to the court, (2) the proximity of the debtor to the court, (3) the proximity of the witnesses necessary to the administration of the estate, (4) the location of the assets, (5) the economic administration of the estate, and (6) the necessity for the ancillary administration if liquidation should result. See Commonwealth, 596 F.2d at 1247. Application of these factors clearly indicate that the venue of the Chapter 15 Case should not be disturbed, and that such case should proceed in the New York Bankruptcy Court.

*(i)  Proximity of Creditors to the New York Bankruptcy Court*

31.      The most significant creditors that Vitro SAB has in the United States are the

holders of the Old Notes.  There is no evidence whatsoever that a single such holder is located in

Texas.  By contrast, the indenture trustee under each Indenture is located in New York.[8]

Furthermore, each of the plaintiffs in the New York Actions, who in the aggregate purport to

hold more than $290 million in principal amount of the Old Notes (i.e., more than four times the

amount purportedly held by the Dissident Minority Noteholders, the petitioning creditors in the

Involuntary Cases), is located in New York.[9]  Moreover, each of such plaintiffs has obviously

chosen New York as a convenient forum to litigate Vitro SAB's and the Guarantors' obligations

under the Old Notes.  That is not surprising, given that each of them is represented by counsel

located in New York.[10]

32.      Significantly, each Indenture contains a forum-selection and consent to

jurisdiction clause pursuant to which New York is indicated as the appropriate jurisdiction for all

litigation relating to the Old Notes.  In fact, the 2012 and 2017 Indentures explicitly provide for a

waiver by, among others, the holders of the Old Notes of any objection based on New York

---

[8]      As disclosed in the 2012 and 2017 Indentures, the Trustee thereunder, The Bank of New York, is located at 101 Barclay Street, 4E, New York, NY 10286.  (See 2012 Indenture § 11.04; 2017 Indenture § 11.04.)  On information and belief, the successor Trustee under the 2013 Indenture, U.S. Bank National Association, is located at 100 Wall Street #16, New York, NY 10005-3716.  (See http://www.usbank.com/en/PersonalHome.cfm, last accessed December 27, 2010.)

[9]      As disclosed in the Verified Statement of White & Case LLP filed pursuant to Bankruptcy Procedure 2019 (the "White & Case Statement"), [Docket No. 41], the principal offices of  (a) Aurelius Capital Management, which on information and belief, manages and/or controls the New York Actions plaintiffs ACP Master, Ltd., Aurelius Capital Master, Ltd., and Aurelius Convergence Master, Ltd., are located at 535 Madison Avenue, 22nd Floor, New York, NY 10022, and (b) of Elliott Management Corporation, which on information and belief, manages and/or controls the New York Actions plaintiffs Elliot International LP and The Liverpool Limited Partnership, are located ate 712 5th Avenue, 35th Floor, New York, NY 10019.

[10]      Aurelius is represented by Friedman, Kaplan, Seiler & Adelman LLP, 1633 Broadway, New York, NY 10019.  (See Verified Complaint filed in the Aurelius New York Action, attached as Exhibit 2 to the Exhibit List.)  Elliot is represented by Dechert LLP, 1095 Avenue of the Americas, New York, NY  10036.  (See Notice of Appearance filed by Dechert LLP in the Chapter 15 Case, attached as Exhibit 30 to the Exhibit List.)

being an inconvenient forum for any such litigation.[11]  (See 2012 and 2017 Indentures § 11.09

("*Consent to Jurisdiction and Service*").[12])  This fact, in and of itself, while not dispositive of the

venue issue, weighs heavily in favor of finding New York to be the more appropriate forum.  See

In re Knight-Celotex, LLC, 427 BR 697, 707-08 (Bankr. N.D. Ill. 2010) (finding that forum

selection clause in guaranty limiting litigation under guaranty to courts in Illinois weighed in

favor of transferring venue of debtor's chapter 7 case to Illinois).  Obviously, the holders of the

Old Notes generally have expressed a clear preference for New York as the most convenient

venue for them when they negotiated the terms of the Indentures, long before they attempted to

achieve a perceived litigation advantage through preemptive forum shopping.

33.     Moreover, not only does each Indenture specify New York as the proper forum

for litigating any issues relating to the Old Notes, each is also expressly governed by New York

law.  (See 2012 and 2017 Indentures § 11.08; 2013 Indenture § 12.08.)  There is no question that

it is generally preferable to have a court sitting in New York interpret New York law.  See, e.g.,

In re Evans, 177 B.R. 193, 197 (Bankr. S.D.N.Y. 1995) (naming each "state's interest in

---

[11]     Upon motions by Vitro SAB on December 28, 2010, (i) the New York Action commenced by Aurelius was
removed to the United States District Court for the Southern District of New York (see ACP Master, Ltd.,
et al. v. Vitro, S.A.B. de C.V., et al., Case No. 10-cv-9595 (S.D.N.Y.) (Keenan, J.) and thereafter referred
to the New York Bankruptcy Court pursuant to a standing order of referral in the District Court, and (ii) the
New York Action commenced by Elliott was removed to the United States District Court for the Southern
District of New York (see Elliott International L.P., et al. v. Vitro, S.A.B. de C.V., et al., Case No. 10-cv-
9596 (S.D.N.Y.) (Rakoff, J.)) and is expected to be referred to the New York Bankruptcy Court pursuant to
a standing order of referral in the District Court.

[12]     Specifically, section 11.09 of each 2012 and 2017 Indentures provides, in relevant part:

> The parties hereto irrevocably agree that any legal suit, action or proceeding against any of them
> arising out of, based on, or relating to the Notes, this Indenture or the transactions contemplated
> hereby may be instituted in any U.S. Federal or state court in the Borough of Manhattan in The
> City of New York. Each of the parties hereto expressly and irrevocably waives, to the fullest
> extent permitted by law, any objection which it may now or hereafter have to the laying of venue
> of any such suit, action or proceeding brought in such a court and any claim that any such suit,
> action or proceeding brought in such a court has been brought in an inconvenient forum.

In addition, section 12.08 of the 2013 Indenture requires Vitro SAB to "irrevocably and unconditionally"
submit to the jurisdiction of state and federal courts in New York with respect to any actions on the 2013
Notes.

deciding . . . cases under its own state law" as a factor in deciding whether to transfer venue). This is yet another factor weighing towards leaving the venue of the Chapter 15 Case in the New York Bankruptcy Court.

34.     In fact, each of the Dissident Minority Noteholders themselves has its principal offices located in or near New York City – the location of the New York Bankruptcy Court,[13] and are represented by White & Case LLP, a law firm based in New York.  Thus, it is hard to see how they can argue that New York is not a convenient forum for them to proceed in.

35.     Accordingly, this factor clearly weighs in favor of leaving the venue of the Chapter 15 Case in the New York Bankruptcy Court.

### (ii) Other Commonwealth Factors

36.     While the "proximity of creditors" to the New York Bankruptcy Court weights heavily towards allowing the Chapter 15 Case to proceed in the New York Bankruptcy Court, the other Commonwealth factors are neutral to this determination: (a) Vitro SAB is a Mexican company with no place of business, no employees, and no assets in the United States, and, accordingly, it is equally "proximate" to (or distant from) this Court and the New York Bankruptcy Court; (b) because, by its very nature, a case ancillary to another, full-fledged, case pending in a foreign jurisdiction, is commenced solely to assure the implementation of the results achieved in such foreign case, there is no estate in the United States to administer;[14] and

---

[13]     As disclosed in the White & Case Statement, the principal offices (a) of Knighthead Capital Management LLC, the investment manager of Knighthead Master Fund LP, are located at 623 5th Avenue, New York, NY 10022; (b) of Brookville Horizons Fund LP are located at 2 Greenwich Plaza, Greenwich, CT 06830; (c) of Davidson Kempner Distressed Opportunities Fund LP are located at 65 East 55th Street, 19th Floor, New York, NY 10022; and (d) of Lord Abbett Bond-Debenture Fund, Inc. are located at 90 Hudson Street, Jersey City, NJ 07302.

[14]     See, e.g., In re Artimm, S.r.l., 278 B.R. 832, 837 (Bankr. C.D. Ca. 2002) (an ancillary case "is not a full-scale bankruptcy case").  The goal of ancillary cases is "to economize and expedite the orderly and equitable distribution *of the foreign estate* . . . and not proliferate litigation between the foreign representatives and persons in the United States." In re Evans, 177 B.R. 193, 197 (Bankr. S.D.N.Y. 1995) (internal citations omitted).

(c) because the scope of an ancillary case is quite narrow, it "does not call for the bankruptcy court to make a determination of the foreign debtor property interests, . . . or the manner in which the validity of creditors' claims is to be determined." In re Artimm, 278 B.R. at 837 (internal citations omitted).

## II. CROSS MOTION OF ALLEGED DEBTORS TO TRANSFER VENUE OF INVOLUNTARY CASES TO NEW YORK BANKRUPTCY COURT

37. Assuming *arguendo* that the Involuntary Cases are not dismissed, once the Court decides that the venue of the Chapter 15 Case should remain in New York, there will be no reason to have the Involuntary Cases proceed in this Court. In making the determination of whether to transfer the venue of the Involuntary Cases to New York, the Court should focus on the relationship between the Alleged Debtors and Texas, which is tenuous at best. That is why the Commonwealth factors discussed above weigh in favor of transferring venue of the Involuntary Cases to the New York Bankruptcy Court for the convenience of the parties.

### A.   Proximity of Creditors to the New York Bankruptcy Court

38. As demonstrated above, despite their choice of the Northern District of Texas as the venue for the Involuntary Cases, the Dissident Minority Noteholders cannot possibly demonstrate that such venue is convenient for the Alleged Debtors' creditors—or at least for those creditors whose claims were the basis for the filing of the Involuntary Cases in the first place, i.e., the holders of the Old Notes.

### B.   Proximity of the Alleged Debtors to the New York Bankruptcy Court

39. Out of the fifteen Alleged Debtors, only two are located in Texas. Two more Alleged Debtors are located in Wisconsin, while the majority are located in Delaware, which is unquestionably closer to New York than it is to Texas.

40.     As the Fifth Circuit has explained, this particular factor relates to the availability of representatives of the Alleged Debtors and other witnesses necessary for efficient administration of these cases.  See Commonwealth, 596 F.2d at 1248.  As explained above, the majority of the Alleged Debtors are located neither in Texas, nor in New York (albeit closer to New York), so their representatives would be equally available in either location.  More important, since the focus of the Involuntary Cases will be the Alleged Debtors' obligations under the Old Notes, which necessarily implicate the consideration of the broader transaction in which Vitro SAB is the primary obligor, it is more than likely that the witnesses necessary for the administration of the Involuntary Cases are located throughout multiple locations in Mexico and the United States.  Thus, this consideration should not weigh in favor of either venue.

## C.     The Efficient and Economic Administration of the Estates

41.     The efficient and economic administration of the estates is the most important consideration for this Court when deciding whether to transfer venue of the Involuntary Cases. See Commonwealth, 596 F.2d at 1247.  Here, the efficient and economical administration of the Alleged Debtors' estates—assuming that the Involuntary Petitions are not dismissed—plainly requires that venue of the Involuntary Cases be transferred to the New York Bankruptcy Court so that they can be administered in the same location as the Chapter 15 Case and the New York Actions.[15]  Any other result would promote inefficiency and encourage the forum shopping engaged in by the members of the Steering Committee.  If the venue of the Involuntary Cases remains in this Court, Vitro and its counsel will face the prospect of defending essentially the same case in Texas (against the Dissident Minority Noteholders) and in New York (against two other members of the Steering Committee, Aurelius and Elliott).  Accordingly, this factor weighs

---

[15]     Both New York Actions are expected to be heard in the New York Bankruptcy Court once the New York Action commenced by Elliott is referred to the New York Bankruptcy Court in a similar fashion as was the New York Action commenced by Aurelius.  (See supra, n. 11.)

heavily in favor of the transfer of venue of the Involuntary Cases to the New York Bankruptcy Court.

**D.      Location of Assets and Ancillary Administration**

42.      The Alleged Debtors' assets are located in *twenty nine* states, which does not include inventory in transit that may be outside one of these states in the process of delivery for which an Alleged Debtor maintains title.

43.      Furthermore, as the Fifth Circuit has stated, the location of assets only becomes a salient factor when the case at issue is a liquidation.  See Commonwealth, 596 F.2d at 1248 (noting that location of assets is not a salient factor where, as here, the case does not involve a liquidation).  There is no indication that the Involuntary Cases will be converted into liquidations.  See id. ("anticipation of the failure of the [rehabilitation] proceeding is an illogical basis upon which to predicate a transfer") (internal citations omitted).

**E.      Other Considerations Support Transfer of Venue of the Involuntary Cases to the New York Bankruptcy Court**

44.      The Dissident Minority Noteholders' actions have evidenced a clear intention to use the Involuntary Cases as a vehicle to disrupt Vitro's consensual restructuring in Mexico. (See, e.g., Emergency Motion of Petitioning Creditors Under Sections 105(a) and 303(f) of the Bankruptcy Code for an Order Conditioning the Debtors' Use of Property and their Motion for Entry of an Order Directing Production of Documents [Docket No. 5] (seeking to prevent the Alleged Debtors' participation in the Voluntary Prepackaged Mexican Proceeding); Motion of Petitioning Creditors Examination by Oral Deposition of, Debtors Pursuant to Rule 2004 of the Federal Rules of Bankruptcy Procedure [Docket No. 19] (seeking discovery of information related to the Voluntary Prepackaged Mexican Proceeding).)  Under these circumstances, the interests of justice would best be served by transferring the Involuntary Cases to the New York

Bankruptcy Court where the Chapter 15 Case is pending so that the New York Bankruptcy Court may properly address any further attempts by the Dissident Minority Noteholders to affect the Voluntary Prepackaged Mexican Proceeding.

45. It is no secret that the Dissident Minority Noteholders have commenced the Involuntary Cases solely to deal with the Alleged Debtors' alleged defaults under the Old Guarantees. These same alleged defaults by the other Guarantors are also the subject of the New York Actions; at the same time, the Old Notes and the Old Guarantees are being restructured globally in the Voluntary Mexican Proceeding. Clearly, if the Chapter 15 Case remains in the New York Bankruptcy Court, and now that the New York Actions have been removed to federal district court and the New York Action commenced by Aurelius has been (and the New York Action commenced by Elliott is expected to be) referred to the New York Bankruptcy Court to be resolved in the context of the Chapter 15 Case (see supra, n.11), leaving the Involuntary Cases in this Court may lead to inconsistent judgments with respect to the exact same issues, resulting in disparate treatment of similarly situated creditors, and undermining the goals of the Voluntary Mexican Proceeding. Such result would hardly serve the interests of justice.

46. Furthermore, as stated above, Vitro SAB is in the process of restructuring $1.5 billion of Restructured Debt through a holistic, consensual process in Mexico. The Dissident Minority Noteholders, who hold approximately $75 million of such debt, have commenced the Involuntary Cases in an underhanded attempt to derail such organization process. Vitro, as a whole, is a company with consolidated assets of approximately $2.5 billion, while the consolidated assets of the Alleged Debtors represent a mere 6.0% of this amount. In light of the foregoing, viewed objectively, the Involuntary Cases are the proverbial tail that should not be allowed to wag the dog.

47.     Based on all of the foregoing, the Involuntary Cases should be transferred to the New York Bankruptcy Court.

[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]

## CONCLUSION

**WHEREFORE,** the Alleged Debtors respectfully request that the Court (i) deny the Motion to Transfer Venue, (ii) grant the Alleged Debtors' cross-motion and order that the venue of the Involuntary Cases be transferred to the New York Bankruptcy Court, and (iii) grant such other and further relief as it deems just and proper.

Dated: New York, New York
December 29, 2010

FULBRIGHT & JAWORSKI L.L.P.

/s/ William R. Greendyke
Louis R. Strubeck, Jr.
State Bar No. (19425600)
William R. Greendyke
State Bar No. (08390450)
2200 Ross Avenue, Suite 2800
Dallas, Texas 75201
Tel:  (214) 855-8000
Fax:  (214) 855-8200

-and-

MILBANK, TWEED, HADLEY & MᶜCLOY LLP
Dennis F. Dunne (admitted *pro hac vice*)
Risa M. Rosenberg (admitted *pro hac vice*)
1 Chase Manhattan Plaza
New York, New York 10005-1413
Telephone:  (212) 530-5000
Facsimile:  (212) 530-5219

-and-

Andrew M. Leblanc (admitted *pro hac vice*)
1850 K Street, NW, Suite 1100
Washington, DC 20006
Telephone:  (212) 835-7500
Facsimile:  (212) 263-7586

*Attorneys for Alleged Debtors*