Dennis F. Dunne (admitted *pro hac vice*)
Risa M. Rosenberg (admitted *pro hac vice*)
**MILBANK, TWEED, HADLEY & M<sup>c</sup>CLOY LLP**
1 Chase Manhattan Plaza
New York, NY 10005-1413
Tel:  (212) 530-5000
Fax:  (212) 530-5219
ddunne@milbank.com
rrosenberg@milbank.com

Andrew M. Leblanc (admitted *pro hac vice*)
**MILBANK, TWEED, HADLEY & M<sup>c</sup>CLOY LLP**
1850 K Street, NW, Suite 1100
Washington, DC 20006
Tel:  (202) 835-7500
Fax:  (202) 263-7586
aleblanc@milbank.com

Louis R. Strubeck, Jr.
State Bar No. (19425600)
William R. Greendyke
State Bar No. (08390450)
**FULBRIGHT & JAWORSKI L.L.P.**
2200 Ross Avenue, Suite 2800
Dallas, Texas 75201
Tel:  (214) 855-8000
Fax:  (214) 855-8200
lstrubeck@fulbright.com
wgreendyke@fulbright.com

ATTORNEYS FOR ALLEGED DEBTORS

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION**

| | | |
|---|---|---|
| In re: | § | Involuntary Chapter 11 |
| | § | |
| VITRO ASSET CORP., et al., | § | Case No. 10-47470-rfn-11 |
| | § | |
| Alleged Debtors.[1] | § | Jointly Administered |
| | § | |

**SUR-REPLY OF ALLEGED DEBTORS TO (I) REPLY OF PETITIONING CREDITORS
IN SUPPORT OF MOTION FOR DETERMINATION THAT CERTAIN BANKRUPTCY
CASES SHOULD PROCEED IN THE UNITED STATES BANKRUPTCY COURT FOR
THE NORTHERN DISTRICT OF TEXAS AND (II) STATEMENT OF ELLIOTT IN
SUPPORT OF PETITIONING CREDITORS' MOTION TO TRANSFER VENUE OF
<u>CHAPTER 15 PETITION TO NORTHERN DISTRICT OF TEXAS</u>**

---

[1] The Alleged Debtors are:  Vitro Asset Corp. (f/k/a American Asset Holdings Corp.), Vitro Chemicals, Fibers & Mining, LLC, Vitro America, LLC, Troper Services, Inc., Super Sky Products, Inc., Super Sky International, In, VVP Holdings, LLC, Amsilco Holdings, Inc., B.B.O. Holdings, Inc., Binswanger Glass Company (f/k/a Troper Inc.), Crisa Corporation, VVP Finance Corporation, VVP Auto Glass, Inc., V-MX Holdings, LLC (f/k/a Crisa Holdings Corp.), and Vitro Packaging, LLC.

TO THE HONORABLE RUSSELL F. NELMS,
UNITED STATES BANKRUPTCY JUDGE:

   The alleged debtors (collectively, the "<u>Alleged Debtors</u>") in the above-captioned involuntary chapter 11 cases (the "<u>Involuntary Cases</u>") hereby submit their sur-reply (the "<u>Sur-Reply</u>") to (i) the reply (Docket No. 119; the "<u>Reply</u>") of Knightland Master Fund, L.P., Brookville Horizons Fund, L.P., Davidson Kempner Distressed Opportunities Fund L.P. and Lord Abbett Bond-Debenture Fund, Inc. (collectively, the "<u>Dissident Minority Noteholders</u>") in support of their motion (as supplemented, the "<u>Motion to Transfer Venue</u>") for determination that the Chapter 15 Case[2] should proceed in this Court pursuant to Bankruptcy Rule 1014(b), and (ii) the statement (Docket No. 117; the "<u>Statement</u>") of Elliott International L.P. and The Liverpool Limited Partnership (collectively, "<u>Elliott</u>") in support of the Motion to Transfer Venue. In support of the Sur-Reply, the Alleged Debtors respectfully state as follows:

**PRELIMINARY STATEMENT**

  1. The Reply submitted by the Dissident Minority Noteholders and the Statement filed by Elliott both obfuscate the fact that ***the only matter before the Court is the propriety of the transfer of the Chapter 15 Case to Texas***, and raise for the first time the novel theory that, in considering what district would best serve the interests of justice and/or the convenience of the parties, the Court should disregard one of the key factors identified by the Fifth Circuit in <u>In re Commonwealth Oil Refining Co.</u>, 596 F.2d 1239, 1247 (5th Cir. 1979), <u>cert. denied</u>, 444 U.S. 1045 (1980), namely, "the proximity of creditors of every kind to the court."

---

[2] All capitalized terms not otherwise defined herein shall have the meaning ascribed to them in the Alleged Debtors' objection to the Motion to Transfer Venue and cross-motion re same, filed on December 29, 2010 [Docket No. 108] (the "<u>Objection</u>").

2

2. As a threshold issue, as a matter of both procedure and fairness, the Court should not even consider a legal argument raised for the very first time in a responsive pleading, particularly one filed (i) by the party bearing the burden of proof and (ii) at the eleventh hour before the hearing. Allowing the Dissident Minority Noteholders to benefit from their flagrant violation of proper procedure to the clear detriment of the Alleged Debtors and their parent company would be patently unfair.

3. To the extent the Court is inclined to consider this new argument, the Alleged Debtors submit it does not help the Dissident Minority Noteholders to satisfy their burden of proof in any event. The Dissident Minority Noteholders assert that their preference[3] that the Chapter 15 Case proceed in this Court, in essence, moots the "proximity of creditors" factor, making such factor (and the fact that all of Vitro SAB's known significant creditors in the U.S. are located or have their principal offices in or around New York) irrelevant to the Court's determination of which district is best suited to hear the Chapter 15 Case.[4]

4. In addition, the Dissident Minority Noteholders cite the same "preference of creditors" factor as the sole argument purportedly demonstrating that the interests of

---

[3] In the Reply, the Dissident Minority Noteholders repeatedly, and without any justification, attempt to conflate themselves with the Steering Committee as a whole. By filing the Involuntary Petitions, the Dissident Minority Noteholders, who, in the aggregate, hold but 6% of the face amount of the Old Notes, have, indeed, expressed their preference for venue in Texas. That preference, however, was not expressed by the other members of the Steering Committee, who have had ample opportunity to join the Dissident Minority Noteholders as petitioning creditors under section 303(c) of the Bankruptcy Code, but have refrained from doing so. Even though Elliott has now filed a Statement in support of the Motion to Transfer Venue, the holdings of the Dissident Minority Noteholders and Elliott combined still account only for 13% of the aggregate amount outstanding under the Old Notes. Aurelius, on the other hand, who holds approximately 17% of the outstanding face amount of the Old Notes, i.e., more than Elliott and the Dissident Minority Noteholders combined, has expressed a preference, by filing its New York Action in New York, for New York as the forum in which to litigate the issues regarding its Old Notes. Accordingly, the repeated statements in the Reply that "the majority of creditors" have expressed a preference for a Texas venue is demonstrably false.

[4] There is no evidence that a single holder of the Old Notes is located in Texas.

3

justice require that the Involuntary Cases should remain in this Court.  (See Reply at ¶ 17.)

5. As will be demonstrated below, applicable case law directly contradicts the Dissident Minority Noteholders' theory.  While creditor preference is one of the many factors that a court may consider in a venue determination, it does not obviate the necessity for the Court to analyze, and give proper weight to, all of the Commonwealth factors, including the actual "proximity of creditors of every kind to the court."  Having done so, the Court should come to the conclusion that the Motion to Transfer Venue should be denied.

## ARGUMENT

### I. Dissident Minority Noteholders Cannot Introduce New Legal Theories in Their Reply

6. As a threshold matter, the Fifth Circuit and courts in this District have repeatedly recognized, as a general tenet of federal procedure, that "[i]t is impermissible to mention an issue for the first time in a reply brief . . ."  Knighten v. C.I.R., 702 F.2d 59, 60 n.1 (5th Cir. 1983); U.S. v. Jackson, 426 F.3d 301, 304 n.2 (5th Cir. 2005) ("Arguments raised for the first time in a reply brief . . . are waived.") (citing Knighten); In re Hunt, 124 B.R. 200, 210 (N.D. Tex. 1991) ("This court will not consider arguments presented for the first time in a reply brief . . .").

7. Courts have further recognized that this prohibition is particularly appropriate when a litigant attempts to introduce new evidence or alternative legal theories that were clearly at issue and should have been raised in its initial moving papers.  See, e.g., CHM Industries, Inc. v. Structural & Steel Products, Inc., No. 4:08-CV-454-Y, 2008 WL 4693385, at *4 (N.D. Tex. Oct. 24, 2008) (refusing to consider

4

alternative legal theory and finding that "it is incumbent upon the Plaintiffs to come forth with arguments and evidence to support their claims from the outset . . . Plaintiffs have failed to demonstrate why they did not argue an alternative theory of ownership or offer evidence in support of that theory in their initial brief, when ownership was so clearly at issue.").

8.  Accordingly, this Court should not permit the Dissident Minority Noteholders to introduce new legal theories and evidence in support of the Motion to Transfer Venue the day before the hearing. The Reply must be stricken from the record, and the Court should determine whether the Dissident Minority Noteholders have carried their burden of proof strictly on the basis of the evidence and arguments contained in the Motion to Transfer Venue.

## II. <u>Commonwealth</u> Factors Must be Applied to Chapter 15 Case, Not Involuntary Cases

9.  In the Reply, the Dissident Minority Noteholders attempt to confuse and obfuscate the issues regarding burden of proof. Since the Alleged Debtors have agreed voluntarily not to proceed on their cross motion, *the only issue before the Court is the Dissident Minority Noteholders' request to transfer venue of the Chapter 15 Case*. As the party seeking to transfer venue, the Dissident Minority Noteholders alone bear the burden of showing, by a preponderance of the evidence, that transfer of the Chapter 15 Case is appropriate. <u>See, e.g.</u>, <u>Norton v. Encompass Servs. Corp.</u>, 301 B.R. 836, 839 (S.D. Tex. 2003).

10. Nevertheless, despite their agreement on the record of the January 5, 2011 hearing to a transfer of the Involuntary Cases to the New York Bankruptcy Court in the event this Court denies the transfer of the Chapter 15 Case, the Reply is misleadingly

5

replete with references to the Alleged Debtors' alleged failure to meet their non-existent burden of proof.[5]

11.     Thus, it is to the circumstances of the Chapter 15 Case, not the Involuntary Cases, that the Commonwealth factors must be applied.  The Dissident Minority Noteholders attempt to overcome this inconvenient critical fact by copiously citing In re Interlink Home Health Care, Inc., 283 B.R. 429 (Bankr. N.D. Tex. 2002), while gratuitously emphasizing the fact that the Interlink court ultimately decided to transfer the second-filed case to the venue of the first-filed case – in an attempt to create an impression that the filing sequence was the court's deciding consideration.  (See, e.g., Reply ¶¶ 6, 7, 20).  In fact, the Interlink court clearly stated that the "inquiry *must focus principally* upon the [second-filed case of Americare, Interlink's purported equity owner], not the [first filed case of Interlink]." Id. at 439 (emphasis added).  It is true that the court then acknowledged that it also "*may* . . . take into account the effect on administration of the [first-filed case of Interlink]."  Id.

12.     However, the Interlink court was very clear as to the "unique problems" that drove it to, in fact, consider the circumstances of the first-filed case first.  Id. at 431-32. One of such "unique problems" in Interlink was the contest over the voting control of the equity of the first-filed Interlink debtor between its secured lender and its purported equity owner – the debtor in the second-filed case (the "Stock Ownership Issue"). Accordingly, the court acknowledged that, to the extent the Stock Ownership Issue is

---

[5]     (See Reply ¶ 8 ("the Alleged Debtors have offered no evidence to establish that venue in New York would be proper for the Chapter 11 Cases"); Reply ¶ 10 ("the Alleged Debtors do not even attempt to show that their creditors (other than those of in [the Steering Committee]) are located closer to New York than to Texas or would otherwise prefer venue in New York"); Reply ¶ 16 ("The Alleged Debtors also offer no facts to suggest that the location of their assets supports venue in New York."); Reply ¶ 18 ("the Alleged Debtors have never even argued that this Court is an improper venue for the [Involuntary] Cases or that New York was an available forum").)

6

ultimately resolved in favor of Americare, the Texas court would likely be faced with a renewed request to transfer the Interlink debtors to the Delaware court where Americare's bankruptcy was pending. Thus, the Interlink court wanted to settle once and for all the issue of the propriety of venue for the Interlinks debtors before it.

13. Ultimately, however, the venue transfer in Interlink was decided based on the application of the Commonwealth factors to the facts that were very different from this case. Americare, the second-filed debtor, had its principal place of business in Dallas, and seven out of its top 20 largest unsecured creditors resided in Texas (more than in any other state). Id. at 441. In stark contrast, Vitro SAB has no presence in Texas, nor, on information and belief, do any of its creditors reside in Texas.

14. The considerations of the administration of the first-filed case were also very different in Interlink from those in the instant case. First and foremost, the Interlink court had an active chapter 11 case before it where numerous substantive events had taken place by the time the venue transfer motion was filed: the court had, among other things, (a) familiarized itself with the Stock Ownership Issue, (b) appointed an examiner, (c) ruled on a motion to dismiss after a two-day hearing, and (d) addressed a number of financing and operational questions. In contrast, no order for relief has yet been entered in the Involuntary Cases, and the Court has not yet had a chance to deal with any substantive issues in the Involuntary Cases: substantially all proceedings before the Court have dealt exclusively with issues surrounding the involuntary posture of the Involuntary Cases.[6]

---

[6] Other than discovery disputes and proceedings related to the request to transfer venue, the Court so far had to deal only with a request for relief under section 303(f) of the Bankruptcy Code, a consensual cash collateral motion, and a status conference on the disputed facts and legal issues surrounding entry for an order for relief.

7

15.     Based on the foregoing, it is clear that the actual restructuring of the combined Interlink/Americare family of companies was going on in the Texas court where the <u>Interlink</u> cases were pending, and not in Delaware, where the <u>Americare</u> cases were filed primarily to stop the state court litigation surrounding the Stock Ownership Issue. <u>Id</u>. at 432. In contrast, all parties have acknowledged that the "main event" here is the restructuring of Vitro SAB, the Alleged Debtors' parent, underway in Mexico. The Chapter 15 Case was filed by Vitro SAB to deal with this same restructuring, while the Involuntary Cases were filed primarily as a litigation tactic by a sub-set of Vitro SAB's creditors.[7]

16.     Thus, properly considered, the issues and considerations before the <u>Interlink</u> court are not, as the Dissident Minority Noteholders misleadingly suggest, "substantially similar" to the case at hand. (Reply ¶ 6.) Accordingly, this Court should afford that case little, if any, precedential value.

### III.    The Creditors' Choice of Forum Is Not Dispositive of the Court's Analysis of Convenience of the Parties

17.     Courts have held that, when considering the proximity of creditors of every kind to the court, the "governing standard is the proximity of the creditors to the court, ***not*** the creditors' choice of forum." <u>Hadar Leasing Int'l Co., Inc. v. D.H. Overmyer Telecasting Co., Inc. (In re Hadar Leasing Int'l Co., Inc.)</u>, 14 B.R. 819, 821 (S.D.N.Y. 1981) (emphasis added) (holding that bankruptcy court's order granting creditors' motion to transfer bankruptcy case to Northern District of Ohio was appropriate not because such forum was preferred by the moving creditors but because,

---

[7] The fact that the second-filed case is a chapter 15 case makes absolutely no difference to the Court's venue determination. Neither Bankruptcy Rule 1014(b), not applicable case law make any distinction with respect to the "importance" of cases depending on the chapter of the Bankruptcy Code under which they were commenced.

8

among other things, majority of debtor's creditors were located in Northern District of Ohio or adjacent districts); In re Enron, 284 B.R. 376, 400 (Bankr. S.D.N.Y. 2002) (in analyzing the "proximity of the creditors to the court" factor, the court must examine both the number of creditors as well as the amounts of claims held by such creditors, and not the creditor's choice of forum).

18. Thus, contrary to the Dissident Minority Noteholders' assertions, their preferences do not moot the consideration of any of the Commonwealth factors, including the factor relating to the "proximity of creditors of every kind to the court," and do not conclusively answer the question of where the interests of justice lie. In fact, in the Commonwealth case itself, the Fifth Circuit stated that the bankruptcy court's determination to give weight to "the location *and desires*" of the creditors moving for the transfer of venue, as opposed to conducting an analysis of the proximity to the court of the majority of creditors and stockholders, "was *inappropriate*." 596 F.2d at 1248 (emphasis added).

19. None of the cases cited in the Reply and the Statement mandate a different result. While the courts in those cases considered the preferences of creditors among other factors, those courts ultimately based their decisions on a full analysis of all of the Commonwealth factors, including the actual proximity of creditors to the court. In its Statement, Elliott has put a particular emphasis on In re Moss, 249 B.R. 411 (Bankr. N.D. Tex. 2000), asserting that the court's decision to keep the involuntary case at issue in the Northern District of Texas was premised on the fact that the petitioning creditors were the debtor's largest creditors and wanted the case to proceed in Texas. (Statement at ¶ 12.) That is a clear mischaracterization of the Moss court's decision. In fact, the court's

9

decision to keep the case in Texas was based on its analysis of numerous factors, namely, that (a) litigation involving allegedly fraudulent transfers by the debtor was pending in a state court in Dallas, (b) some of the defendants in such litigation were located in Texas, (c) significant creditors were actually located in Texas, (d) the petitioning creditors' counsel was located in Texas, and (e) other potentially significant creditors could just as easily participate in the case whether it was pending in Texas or California.  249 B.R. at 425-26.  Had the Dissident Minority Noteholders been correct that the preference of the petitioning creditors forecloses the necessity for any further inquiry, the Moss court would have had no need to engage in this thoughtful and detailed analysis.

   20.  In fact, despite the Dissident Minority Noteholders' assertions of the supremacy of creditor preference over other factors, courts have expressed a fear that acknowledging such supremacy would thwart the intention and purpose of the venue statutes.  See, e.g., In re Distribs. Warehouse, Inc., 1 B.R. 539, 542 (Bankr. M.D. Fla. 1979) (in denying motion to transfer venue from Florida to Ohio, court stated that "the fact that it might be more convenient for the creditors' committee to have this case transferred to Ohio is *of no consequence* and it would in fact, establish *a very dangerous precedent*.  If creditors' committees would be permitted to select the venue in an arrangement proceeding, it would completely thwart the venue provision of [former Bankruptcy Rule 116(b)].") (emphasis added); Hadar Leasing Int'l Co., Inc., 14 B.R. at 821 (same).

### IV. The Court's Disregard of Creditors' Choice of Forum Will Prevent Forum-Shopping

   21.  Even in cases where "as far as the convenience of the creditors, debtors, and witnesses is concerned as relates to their proximity to the two court points, there is no

significant difference one way or the other," courts have held that "[j]ustice . . . dictates that venue should be resolved in favor of the forum where the debtors, most of the creditors, and the bulk of the potential witnesses reside and principally operate their businesses." First Nat'l Bank in Sioux City, Iowa v. Dahlquist (In re Dahlquist), 34 B.R. 476, 487 (Bankr. D.S.D. 1983). This "result *discourages forum shopping*, which is not favored in the law, and *holds the moving party to both prongs of the two-part test* of convenience of the parties and the interests of justice." Id. (emphasis added).

22. To grant the Motion to Transfer Venue simply because the Dissident Minority Noteholders have expressed a preference for the venue in Texas for the Involuntary Cases would countenance the very kind of forum-shopping that the venue statutes were meant to prevent and which courts abhor.

23. Thus, for all of the foregoing reasons, the Chapter 15 Case should not be transferred to this Court.

[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]

## **CONCLUSION**

**WHEREFORE**, the Alleged Debtors respectfully request that the Court deny the Motion to Transfer Venue and grant such other and further relief as it deems just and proper.

Dated:  New York, New York
        January 7, 2011

**FULBRIGHT & JAWORSKI L.L.P.**

/s/ *William R. Greendyke*_____
Louis R. Strubeck, Jr.
State Bar No. (19425600)
William R. Greendyke
State Bar No. (08390450)
2200 Ross Avenue, Suite 2800
Dallas, Texas 75201
Tel:  (214) 855-8000
Fax:  (214) 855-8200

-and-

**MILBANK, TWEED, HADLEY & M$^C$CLOY LLP**
Dennis F. Dunne (admitted *pro hac vice*)
Risa M. Rosenberg (admitted *pro hac vice*)
1 Chase Manhattan Plaza
New York, New York 10005-1413
Telephone:  (212) 530-5000
Facsimile:  (212) 530-5219

-and-

Andrew M. Leblanc (admitted *pro hac vice*)
1850 K Street, NW, Suite 1100
Washington, DC 20006
Telephone:  (212) 835-7500
Facsimile:  (212) 263-7586

*Attorneys for Alleged Debtors*