

U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

**ENTERED**

TAWANA C. MARSHALL, CLERK
THE DATE OF ENTRY IS
ON THE COURT'S DOCKET



**The following constitutes the ruling of the court and has the force and effect therein described.**

*[signature]*

**United States Bankruptcy Judge**

**Signed January 21, 2011**

---

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## FORT WORTH DIVISION

| | | |
|---|---|---|
| In re: | § | **Involuntary Chapter 11** |
| | § | |
| VITRO ASSET CORP., *et al.* | § | Case No. 10-47470-rfn-11 |
| | § | |
| **Alleged Debtors.** | § | **Jointly Administered** |
| | § | |

### FINAL ORDER PURSUANT TO 11 U.S.C. §§ 105, 303, 361, 363 AND 364 (I) AUTHORIZING CERTAIN FACILITY OBLIGORS (A) TO CONTINUE TO OBTAIN SECURED FINANCING, (B) TO CONTINUE TO UTILIZE THEIR EXISTING CASH MANAGEMENT SYSTEM AND (C) TO USE CASH COLLATERAL, (II) APPROVING POST-PETITION FINANCING, AND (III) GRANTING ADEQUATE PROTECTION

This matter came on for hearing on January 19, 2011 (the "*Final Hearing*") upon the Joint Emergency Motion (the "*Motion*") of Vitro America, LLC, a Delaware limited liability company ("*Vitro America*"), and VVP Finance Corporation, a Delaware corporation ("*Finance*," and together with Vitro America, the "*Borrowers*"), and VVP Holdings, LLC, a Delaware limited liability company ("*Holdings*"), VVP Auto Glass, Inc., a Delaware corporation ("*Auto Glass*"), Super Sky International, Inc., a Delaware corporation ("*International*") and Super Sky

1738224_7

Products, Inc., a Wisconsin corporation ("*Products*," and collectively with Holdings, Auto Glass and International, the "*Guarantors*"), each an alleged debtor (collectively, the "*Facility Obligors*")[1] in the above-captioned involuntary Chapter 11 cases, Bank of America, N.A., a national banking association (the "*Lender*"), and Banc of America Leasing & Capital, LLC ("*BALC*") pursuant to Sections 105, 303(f), 361, 363 and 364 of title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.* (the "*Bankruptcy Code*") and Rules 2002, 4001 and 9014 of the Federal Rules of Bankruptcy Procedure (the "*Bankruptcy Rules*"), seeking entry of a final order (the "*Final Order*") *inter alia*:

(i)  authorizing the Borrowers to continue during the Gap Period (as defined below) to request and receive loans and other extensions of credit from the Lender pursuant to the terms of the Loan Agreement (as defined below) and the securing and repayment thereof;

(ii) under Bankruptcy Code Section 364(d), authorizing the Facility Obligors to obtain secured post-petition financing on a junior priority lien basis (the "*Affiliate Loan Facility*") during the Gap Period (as defined below) pursuant to the terms and conditions of a certain Subordinated Post-Petition Loan and Security Agreement (as amended, supplemented, restated or otherwise modified from time to time, the "*Affiliate Loan Agreement*"), to be entered into among the Borrowers, the Guarantors and Vitro, S.A.B. de C.V. or a non-debtor affiliate ("*Vitro*" or the "*Affiliate Lender*");

(iii) authorizing the Facility Obligors to execute and deliver the Affiliate Loan Agreement and other related loan documents (collectively with the Affiliate Loan Agreement, the "*Affiliate Loan Documents*") among the Borrowers, the Guarantors and the Affiliate Lender, and to

---

[1] The Facility Obligors, together with Vitro Asset Corp., Vitro Chemicals, Fibers & Mining, LLC, Troper Services, Inc., Amsilco Holdings, Inc., B.B.O. Holdings, Inc., Binswanger Glass Company, Crisa Corporation, V-MX Holdings, LLC and Vitro Packaging, LLC, comprise the alleged debtors (collectively, the "*Alleged Debtors*") in the above-captioned involuntary Chapter 11 cases.

perform such other acts as may be necessary or desirable in connection with the Affiliate Loan Agreement;

(iv) granting to the Affiliate Lender automatically perfected security interests in and liens on all of the Collateral (as defined below), including, without limitation, all property constituting Cash Collateral (as defined below), which liens would be junior in all respects to the Pre-Petition Liens (as defined below) to secure the advances, if any, made during the Gap Period under the Affiliate Loan Agreement;

(v) authorizing the Facility Obligors to continue during the Gap Period utilizing, and the Lender to continue making available to the Facility Obligors, the bank account services, lockboxes, corporate credit cards, treasury management services and other aspects of the cash management system established at the Lender (the "*Cash Management System*"), subject to all of the terms and conditions in the pre-petition agreements between one or more of the Facility Obligors and the Lender relating to such Cash Management System and with the ongoing benefit of all collateral security therefor; and

(vi) authorizing the use during the Gap Period of Cash Collateral and providing adequate protection to the Lender for any diminution in value of its interests (held for itself and BALC) in the Pre-Petition Collateral (as defined below) as a condition to the Facility Obligors' use of such property, which is subject to the Pre-Petition Liens held by Lender.

The Court having considered the Motion, the stipulations of counsel and evidentiary proffers submitted at the interim hearing held on November 23, 2010 (the "*Interim Hearing*"), and at the Final Hearing, and the certification of counsel for the Facility Obligors that the Motion has been served by them on the U.S. Trustee (as defined below) and counsel of record for the Petitioners (as defined below); and adequate protection being provided on account of the

interests of holders of liens on the property of the Facility Obligors on which liens are to be granted; and the Court having entered on December 3, 2010, an interim order authorizing use of cash collateral and funding on an interim basis, and granting adequate protection on account of the interests of holders of liens on the property of the Facility Obligors on which liens are to be granted; and adequate notice of the Final Hearing having been provided in accordance with Bankruptcy Rules 4001(b), (c) and (d) and 9014; and the Final Hearing to consider the relief requested in the Motion having been held and concluded; and all objections, if any, to the relief requested in the Motion having been withdrawn, resolved or overruled by the Court;

Based upon the record established at the Interim Hearing, as further clarified by the Court on the record at the hearing held on December 1, 2010, and at the Final Hearing, and after due deliberation and consideration, and for good and sufficient cause appearing therefor;

THE COURT HEREBY MAKES THE FOLLOWING FINDINGS OF FACT[2] AND CONCLUSIONS OF LAW:

A. <u>Involuntary Petition Date</u>. On November 17, 2010 (the "*Involuntary Petition Date*"), Knighthead Master Fund, L.P., Brookville Horizons Fund, L.P., Davidson Kempner Distressed Opportunities Fund, LP, and Lord Abbett Bond-Debenture Fund, Inc., as alleged creditors (collectively, the "*Petitioners*"), filed involuntary petitions for the entry of orders for relief with respect to the Alleged Debtors under Chapter 11 of the Bankruptcy Code (the "*Involuntary Petitions*").

---

[2] The findings of fact and conclusions of law in this Final Order and in the Interim Order relating to any of the Pre-Petition Debt, the BALC Leasing Obligations, the Pre-Petition Liens or the Pre-Petition Collateral (as those terms are defined later in the text of this Final Order) are solely for purposes of granting the relief requested in the Motion and are based on statements made in the Motion and the proffered testimony at the Interim Hearing and Final Hearing, but no such findings or conclusions shall in any case be binding upon any party in interest.

B.  Preliminary Conference.  The Court held a preliminary conference (the "*Preliminary Conference*") regarding the possible entry of orders for relief on December 20, 2010, and a final hearing thereon has been scheduled for February 10, 2011.

C.  Conduct and Nature of Business.  The Facility Obligors manufacture, fabricate and distribute glass products across the automotive, home construction and commercial construction industries.  As authorized by Section 303(f) of the Bankruptcy Code, the Facility Obligors continue to operate their businesses and use, acquire or dispose of property as if an involuntary case had not been commenced against them.

D.  Interim Order.  Based upon the Motion, the stipulations of counsel and evidentiary proffers submitted at the Interim Hearing, as further clarified by the Court on the record at the hearing held on December 1, 2010, and the certification of counsel for the Facility Obligors that the Motion has been served by them on the U.S. Trustee (as defined below) and counsel of record for the Petitioners, the Court approved that certain Interim Order Pursuant to 11 U.S.C. §§ 105, 303, 361, 363 and 364 (I) Authorizing Certain Facility Obligors (A) to Continue to Obtain Secured Financing, (B) to Continue to Utilize Their Existing Cash Management System and (C) to Use Cash Collateral, (II) Approving Post-Petition Financing, (III) Granting Adequate Protection and (IV) Scheduling a Final Hearing, which interim order was entered on December 3, 2010 (the "*Interim Order*").  Pursuant to the Interim Order and Bankruptcy Rule 4001, the Facility Obligors were authorized, among other things, to continue to incur secured borrowings from the Lender pursuant to the terms of the Loan Documents (as defined below) and the Interim Order, and to incur borrowings on an unsecured basis from the Affiliate Lender pursuant to the terms of Affiliate Loan Agreement and the Interim Order,

pending the Final Hearing on the Motion. At the Preliminary Conference, the Court scheduled the Final Hearing for January 19, 2011.

E.     <u>Pre-Petition Debt</u>. The Borrowers are party to that certain Loan and Security Agreement, dated as of June 27, 2003 (hereinafter, together with all amendments thereto and modifications thereof, the "*Loan Agreement*"), pursuant to which the Lender provided the Borrowers with, among other things, a $35 million secured revolving credit facility (the "*Loan Facility*"), including revolving credit loans and letters of credit, with a sublimit for letters of credit of $18 million. In connection therewith, the Guarantors executed, in the Lender's favor, certain Continuing Guaranty Agreements (the "*Guaranty Agreements*") by which they guaranteed payment and performance of all Obligations under (and as defined in) the Loan Agreement. As of the Involuntary Petition Date, there was outstanding under the Loan Facility (1) revolving credit loans in the approximate principal amount of $8,610,575, (2) reimbursement obligations for any draws made upon letters of credit issued by the Lender for the account of the Borrowers in the aggregate face amount of approximately $14,180,000 and (3) corporate credit card debt of approximately $501,000 (collectively, with all other obligations of any Facility Obligor to the Lender as of the Involuntary Petition Date, including all indebtedness associated with the Cash Management System and all interest, fees, legal expenses and other amounts heretofore or hereafter accruing on any of the foregoing or at any time chargeable to any of the Facility Obligors in connection therewith, referred to as the "*Pre-Petition Debt*").

F.     <u>Pre-Petition Liens</u>. As security for the payment of all Pre-Petition Debt and certain equipment lease indebtedness owed to BALC in the approximate principal amount on the Involuntary Petition Date of $3,602,000 (together with all other liabilities of any Facility Obligor under any such equipment lease, the "*BALC Leasing Obligations*"), each Facility Obligor other

- 6 -

than Products granted to the Lender, for itself and for the benefit of BALC, pursuant to the Loan Agreement, the Guaranty Agreements, and various mortgages and related security documents (collectively, the "*Loan Documents*"), security interests in and liens upon (the "*Pre-Petition Liens*") (1) all or substantially all of such Facility Obligor's personal property, including, without limitation, all accounts, inventory, contract rights, chattel paper, documents, instruments, supporting obligations, general intangibles, equipment, money, securities, deposit accounts, and books and records, and (2) certain real property and improvements thereto located in Los Angeles County, California, Denver County, Colorado, Grenada County, Mississippi, Guilford County, North Carolina, Oklahoma County, Oklahoma, Tulsa County, Oklahoma, Dallas County, Texas, Harris County, Texas, and Henrico County, Virginia (all such real and personal property, as the same existed on the Involuntary Petition Date, together with all cash and non-cash proceeds thereof, the "*Pre-Petition Collateral*").

       G.    <u>Cash Management System</u>.  The Facility Obligors maintain all or substantially all of their banking relationships with the Lender, including lockboxes and depository accounts.  As part of the Cash Management System, obligors on accounts receivables of the Facility Obligors are directed to remit payment with respect to such accounts to a collection account at the Lender or a lockbox over which the Lender exercises dominion and control, and after the Lender's receipt thereof, all such collections are applied to the Pre-Petition Debt in accordance with the Loan Documents.  Some or all of the Facility Obligors have the use of corporate credit cards issued by Lender.  The Lender asserts that its willingness to continue to maintain the foregoing components of the Cash Management System for the Facility Obligors is predicated upon the Lender receiving assurances, in accordance with the provisions of the Interim Order and this Final Order, that the Lender is authorized to continue to implement and administer the Cash

Management System during the Gap Period in accordance with all relevant pre-petition agreements between the Facility Obligors and Lender and with the ongoing benefit of all collateral security therefor.

H.     <u>Affiliate Loan Facility</u>.  The Affiliate Lender has represented that it is willing to extend credit to the Facility Obligors to make up operational shortfalls and certain capital expenditures as well as to pay down debt (the "*Affiliate Funding*").  At this time, the record is insufficient to determine that (1) the Facility Obligors are unable to obtain financing from sources other than the Affiliate Lender on terms more favorable than the Affiliate Loan Facility, and (2) the Facility Obligors have been unable to obtain unsecured credit allowable under Bankruptcy Code Section 503(b)(1) as an administrative expense.  At this time, it is also not clear if the Facility Obligors will need the funding provided under the Affiliate Loan Facility during the Gap Period, but the Facility Obligors are concerned that the damage to their business from the adverse publicity surrounding the filing of the Involuntary Petitions, including the possible reduction of normal credit terms by vendors, increase the likelihood of the need for such funding.  Accordingly, the Facility Obligors seek authorization to enter into the Affiliate Loan Agreement with the Affiliate Lender during the Gap Period on an unsecured basis.  The Lender and BALC consent to the Affiliate Funding on the terms and conditions that are set forth in the Affiliate Loan Agreement, to the extent such terms and conditions are consistent with this Final Order.  The Facility Obligors reserve all of their rights to request additional hearings to renew their request that the Affiliate Lender be granted post-petition security interests in and liens upon the Collateral in connection with the Affiliate Funding.  If the Affiliate Lender is granted post-petition security interests in and liens upon any of the Collateral in connection with the Affiliate Funding, the Lender, the Affiliate Lender and the Facility Obligors agree that they will first

execute a lien subordination agreement, in form and substance satisfactory to the Lender, BALC, the Affiliate Lender and the Facility Obligors, pursuant to which the Affiliate Lender will subordinate the priority of such post-petition security interests and liens in its favor to the Pre-Petition Liens, equipment liens granted to BALC pursuant to equipment leases with one or more Facility Obligors as security for the BALC Leasing Obligations, and all other liens and security interests granted to the Lender pursuant to the Interim Order, this Final Order or any subsequent order of the Court.

I.     <u>Cash Collateral/Financing</u>.   The Facility Obligors intend to continue to operate their businesses in the ordinary course pursuant to Section 303(f) of the Bankruptcy Code and, in connection therewith, to use, sell and otherwise dispose of their respective properties, including property constituting Pre-Petition Collateral.  The Facility Obligors believe that their operations can be sustained, in part, by the use of cash proceeds from the sale, collection or other disposition of their existing and future assets, including the Pre-Petition Collateral (all such proceeds being referred to as the "*Cash Collateral*").  The Borrowers forecast that they will also need to continue accessing borrowed funds during the Gap Period.  Thus, to prevent harm to the Facility Obligors, their creditors and equity holders, the Borrowers seek authorization to continue obtaining revolving credit loans and other extensions of credit from the Lender under the Loan Agreement, and for the Lender to continue to be authorized to honor such requests for revolving credit loans and other extensions of credit in accordance with the terms of the Loan Agreement and with all of the rights, benefits, privileges and security set forth in the Loan Documents, including, without limitation, the ongoing effectiveness of the Pre-Petition Liens with respect to all Pre-Petition Collateral and attachment to all other like items of tangible or intangible property of each Facility Obligor created, acquired or arising after the Involuntary Petition Date (all such

after-acquired property being referred to as "*Post-Petition Collateral*" and, together with the Pre-Petition Collateral, the "*Collateral*").  The Lender and BALC are willing to consent to the Facility Obligors' use of the Pre-Petition Collateral, including the Cash Collateral, and the Lender is willing to continue to provide financing, on the terms and subject to all of the conditions of this Final Order, including, without limitation, the provision of adequate protection to the Lender as hereinafter set forth.

J.      Need for Use of Cash Collateral/Financing.  Since the Involuntary Petition Date, the Facility Obligors' need to (1) use Cash Collateral during the Gap Period and to obtain ongoing credit during the Gap Period pursuant to the Loan Agreement and (2) obtain credit during the Gap Period pursuant to the Affiliate Loan Agreement has been immediate and critical in order to enable the Facility Obligors to continue operations.  The ability of the Facility Obligors to finance their operations, maintain business relationships with their vendors, suppliers and customers and to pay their employees has required the availability of working capital from the Loan Facility and Affiliate Loan Facility and the use of Cash Collateral, the absence of which would immediately and irreparably harm the Facility Obligors, their creditors and equity holders. The Facility Obligors have not had sufficient available sources of working capital and financing to operate their businesses or maintain their properties in the ordinary course of business without the Loan Facility, the Affiliate Funding and authorized use of Cash Collateral.

K.      Adequate Protection. The Lender is entitled to receive adequate protection as more fully set forth in paragraph 5 of this Final Order, pursuant to Sections 361, 363 and 364 of the Bankruptcy Code, for any diminution in value of its interests (held for itself and BALC) in the Pre-Petition Collateral resulting from the Facility Obligors' use of Cash Collateral or their use, sale, consumption or other disposition of any part of the Pre-Petition

Collateral consisting of inventory (whether raw materials, work in process or finished goods) or BALC leased equipment.

L.    Interim Borrowing.    After the Interim Hearing, and pursuant to the Interim Order, the Court authorized, among other things, the continued extension of credit under the Loan Documents and extensions of credit under the Affiliate Loan Agreement.  Based upon the record of the Interim Hearing, the Court authorized and empowered the Facility Obligors to execute and deliver the Affiliate Loan Agreement and authorized, empowered and directed the Facility Obligors after execution to perform all of the Affiliate Obligations (as defined below) in accordance with the terms of the Interim Order and the Affiliate Loan Agreement.

M.    Business Judgment and Good Faith Pursuant to Section 364(e).    The Lender and BALC have indicated a willingness to consent to the use of Cash Collateral, and the Lender has indicated a willingness to extend credit under the Loan Agreement, subject to (i) the terms of the Interim Order and this Final Order and (ii) entry of findings by this Court that such use of Cash Collateral and such extensions of credit are essential to the Facility Obligors, that the Lender is extending credit to the Facility Obligors pursuant to the terms of the Loan Agreement in good faith, and that the Lender's protections granted pursuant to this Final Order will have the protections provided in Section 364(e) of the Bankruptcy Code and will not be affected by any subsequent reversal, modification, vacatur, amendment, reargument or reconsideration of this Final Order or any other order.  The use of Cash Collateral and extensions of credit under the Loan Agreement, the Interim Order and this Final Order were negotiated in good faith and at arm's length among the Facility Obligors, the Lender and BALC.  Use of Cash Collateral and credit to be extended under the Loan Facility shall be deemed to have been so allowed, advanced, made, used or extended in good faith, and for valid business purposes and uses, within

the meaning of Section 364(e) of the Bankruptcy Code, and the Lender and BALC are therefore entitled to the protections and benefits of Section 364(e) of the Bankruptcy Code and this Final Order.

N.    Notice.  Notice of the Final Hearing and the relief requested in the Motion has been provided, and certified to, by the Facility Obligors, whether by facsimile, email, overnight courier or hand delivery, to certain parties in interest, including:  (i) the office of the United States Trustee (the "*U.S. Trustee*"), (ii) counsel to the Affiliate Lender and (iii) counsel for the Petitioners (collectively, the "*Notice Parties*").  The parties have made reasonable efforts to afford the best notice possible under the circumstances and such notice is good and sufficient to permit the relief set forth in this Final Order.

Based upon the foregoing findings and conclusions, the Motion and the record before the Court with respect to the Motion, and good and sufficient cause appearing therefor,

IT IS HEREBY ORDERED, ADJUDGED AND DECREED as follows:

1.    Granting of Motion.  The Motion is hereby granted, on a final basis, as and to the extent hereinafter set forth and the provisions of the Interim Order are hereby ratified and continued in effect except to the extent that any such provisions are in conflict with or superseded by the provisions of this Final Order.  All findings of fact and conclusions of law contained in the Interim Order are incorporated and restated herein, subject in each case to the qualifications set forth in footnote 2 above.

2.    Authorization of the Affiliate Loan Facility.    Entry into the Affiliate Loan Facility and the Affiliate Funding thereunder during the Gap Period are hereby ratified and approved on a final basis, provided that, unless and until otherwise authorized by the Court, all Affiliate Funding shall be on an unsecured basis, subject to the provisions of clause (c) of the

first sentence of paragraph 9 of this Final Order. The Facility Obligors are expressly and immediately authorized and empowered on a final basis to execute and deliver the Affiliate Loan Documents (to the extent not heretofore executed by the parties thereto),[3] to incur and perform the obligations thereunder in accordance with, and subject to the terms of, this Final Order and the Affiliate Loan Documents, and to deliver all instruments and documents which may be required or necessary for the performance by the Facility Obligors under the Affiliate Loan Facility. Upon execution and delivery, the Affiliate Loan Documents shall represent valid and binding obligations of the Facility Obligors, enforceable against each of the Facility Obligors in accordance with their terms. Upon entry of the Interim Order, the Borrowers were authorized and directed (and such authorization is hereby ratified, confirmed and approved on a final basis) to request Affiliate Funding on an unsecured basis in the ordinary course.

3.    _Affiliate Obligations_.  Subject to the provisions of clause (c) of the first sentence of paragraph 9 of this Final Order, the Affiliate Loan Documents and this Final Order shall constitute and evidence the validity and binding effect of both the Affiliate Funding and all of the Facility Obligors' other obligations under the Affiliate Loan Facility (collectively, the "_Affiliate Obligations_"), which Affiliate Obligations shall be enforceable against the Facility Obligors. Upon entry of this Final Order, the Affiliate Obligations will include all loans and any other indebtedness or obligations, contingent or absolute, which may now or from time to time hereafter be owing by any of the Facility Obligors to the Affiliate Lender, under the Affiliate Loan Documents and whether borrowed under the terms of the Interim Order or this Final Order, including, without limitation, all principal, interest, accrued interest, costs, fees, expenses and other amounts under the Affiliate Loan Documents. Subject to the provisions of clause (c) of the

---

[3] Copies of any Affiliate Loan Documents (including any amendment, supplement, restatement or modification thereof) shall be provided to counsel to the Lender and counsel to the Petitioners promptly after execution thereof.

first sentence of paragraph 9 of this Final Order, the Affiliate Obligations shall be due and payable, without notice or demand, upon the expiration of the Gap Period, underlined provided that no repayment of the Affiliate Obligations shall be permitted to be made by any Facility Obligor unless at the time of such repayment the conditions under the Loan Agreement (as in effect on the date hereof) for the repayment of Vitro-Holdings Intercompany Debt (as defined in the Loan Agreement) are satisfied (regardless of whether any Affiliate Obligations constitute Vitro-Holdings Intercompany Debt).

4.    <u>Turnover of and Authorization to Use Cash Collateral</u>.  Subject to the provisions of paragraph 5 of this Final Order regarding adequate protection for any diminution in value of the Lender's interests (held for itself and BALC) in the Pre-Petition Collateral and subject to the ongoing satisfaction of the Basic Funding Conditions (as defined below), unless and to the extent satisfaction of a Basic Funding Condition is waived or the time for satisfaction is extended in writing by the Lender in its sole and absolute discretion, the Facility Obligors shall continue to have the authority granted to them under the Interim Order, during the Gap Period, to use Cash Collateral (i) in the operation of the business of the Facility Obligors, (ii) to make payments to the Lender with respect to the Pre-Petition Debt, the Gap Credit Extensions (as defined below), and Cash Management Obligations (as defined below), in each case, to the extent authorized by the Interim Order or this Final Order, and (iii) to make payments to BALC in respect of the BALC Leasing Obligations accruing during the Gap Period, all of which payments to the Lender or BALC shall be deemed to have been made for fair and equivalent value and may be retained irrespective of the provisions of Section 549 of the Bankruptcy Code.  As used herein, the term "*Gap Period*" shall mean the period from the Involuntary Petition Date to the earliest to occur of (a) entry of an order for relief with respect to any Facility Obligor or (b) dismissal of the

Involuntary Petitions. The Lender was authorized under the Interim Order, and continues to be authorized on a final basis pursuant to this Final Order, to turn over to the Facility Obligors (or any of them) all such Cash Collateral received by the Lender during the Gap Period (to the extent representing collected and available funds) that is not applied to the Gap Credit Extensions or Pre-Petition Debt (to the extent payment thereof is authorized by this Final Order) and in no event shall any such turnover be deemed to be a loan or other extension of credit by the Lender under the Loan Agreement or otherwise. No Cash Collateral may be used by any Alleged Debtor that is not a Facility Obligor. The Lender shall have no responsibility for any Facility Obligor's use of any Cash Collateral.

5. <u>Adequate Protection</u>. As adequate protection against any diminution in value of the Lender's interests in the Pre-Petition Collateral (held for itself and BALC) during the Gap Period, including, without limitation, any portion of the Pre-Petition Collateral consisting of Cash Collateral, resulting from any Facility Obligor's use of Cash Collateral or use, sale, consumption or other disposition of any part of the Pre-Petition Collateral consisting of inventory (whether raw materials, work in process or finished goods) or BALC leased equipment, (a) the Lender was granted by the Interim Order, effective as of the Involuntary Petition Date, a valid, binding and enforceable replacement lien (which shall be deemed automatically perfected) upon all Post-Petition Collateral, whenever created, acquired or arising, and such grant is hereby ratified, confirmed and approved on a final basis pursuant to this Final Order; (b) the Facility Obligors were authorized and directed by the Interim Order to make, and are hereby authorized and directed by this Final Order to continue to make, periodic payments to BALC in respect of the BALC Leasing Obligations, as required by the BALC equipment leases, to the extent such payments relate to lease rentals accruing during the Gap Period; (c) the Facility

Obligors were authorized and directed by the Interim Order to pay, and are hereby authorized and directed by this Final Order to continue to pay, to the Lender any amount necessary to repay in full any Overadvances (as defined below); and (d) the Facility Obligors are hereby authorized and directed to pay (in each case, as applicable, at the non-default contract rate and on the applicable non-default payment dates) (i) all reasonable fees, costs and expenses, including, without limitation, legal and other professional fees and expenses, incurred by the Lender during the Gap Period, as required under the Loan Documents, (ii) any fees chargeable under the Loan Agreement that accrue or become due or payable after the Involuntary Petition Date, and (iii) any other amounts payable to the Lender pursuant to this paragraph 5 or paragraph 7 of this Final Order, regardless of whether such payment is applied to the Pre-Petition Debt or Gap Credit Extensions. Any payments made to BALC or the Lender pursuant to the foregoing provisions of this paragraph 5 shall not be recoverable under Section 549 of the Bankruptcy Code because all such payments shall be deemed to be for value received within the meaning of Section 549 of the Bankruptcy Code. For purposes of determining the use, sale or other disposition of inventory, it will be presumed that inventory in existence on the Involuntary Petition Date was the first inventory to be used, sold or otherwise disposed of and that any inventory acquired after the Involuntary Petition Date was not used, sold or otherwise disposed of until after the disposition of all inventory in existence on the Involuntary Petition Date. Notwithstanding anything to the contrary contained in paragraph 4 of this Final Order, the Facility Obligors shall not be authorized to use any Cash Collateral if at the time of such use, or immediately after giving effect thereto, the aggregate amount of the Pre-Petition Debt (including, without limitation, any accrued and unpaid interest at the non-default rate, fees or other charges in connection therewith) and any additional extensions of credit after the Involuntary Petition Date under the Loan

Agreement (including, without limitation, any accrued and unpaid interest at the non-default rate, fees or other charges in connection therewith) exceeds (or would exceed) the Borrowing Base (as defined in the Loan Agreement), with any such excess being referred to herein as an "*Overadvance.*" For the avoidance of doubt, accounts and inventory of Borrowers which comprise Post-Petition Collateral and that otherwise qualify as Eligible Accounts or Eligible Inventory (as defined in the Loan Agreement) shall be included in the Borrowing Base solely for the purpose of calculating an Overadvance. If a dispute arises between the Facility Obligors and the Lender regarding whether an Overadvance exists, such dispute shall be promptly brought to the attention of the Court for resolution in the absence of the parties' ability to resolve such dispute on their own. The Facility Obligors' authority to use Cash Collateral shall resume after any Overadvance ceases to exist (provided all other conditions to such use as set forth in this Final Order are satisfied) and until such time (if ever) that a subsequent Overadvance exists.

6. <u>Gap Period Extensions of Credit</u>. The Borrowers were authorized by the Interim Order, and such authorization is hereby ratified, confirmed and approved on a final basis pursuant to this Final Order, to request extensions of credit from the Lender pursuant to the Loan Agreement and to incur indebtedness and other obligations under the Loan Agreement, in each case during the Gap Period (including all interest, fees and other charges in connection therewith, the "*Gap Credit Extensions*"); and the Lender was authorized by the Interim Order, and such authorization is hereby ratified, confirmed and approved on a final basis pursuant to this Final Order, to honor such requests and to make such Gap Credit Extensions subject to and with the benefit of all of the terms, conditions, rights, benefits, privileges and collateral security set forth in the Loan Agreement and other Loan Documents, during the Gap Period (but not beyond February 28, 2011, unless otherwise consented to by the Lender in its discretion). Unless and

until the Non-Discretionary Funding Conditions (as defined below) are satisfied, the Lender shall have no obligation whatsoever to honor any request of the Borrowers for any Gap Credit Extensions, all of which will be made (or declined) by the Lender in its sole and absolute discretion and, if made, in such amounts and at such times as the Lender may in its sole discretion elect; provided, however, that it is acknowledged and understood that the Lender will be disinclined to make any Gap Credit Extensions (or to allow use of Cash Collateral for purposes other than payment of the Gap Credit Extensions and other amounts authorized to be paid pursuant to paragraph 5 of this Final Order) unless all of the Basic Funding Conditions are and remain satisfied. If and for so long as the Non-Discretionary Funding Conditions are satisfied, the Lender's undertaking to honor requests for Gap Credit Extensions under the Loan Agreement during the Gap Period (but not beyond February 28, 2011, unless otherwise consented to by the Lender in its sole discretion and after at least 3 days prior written notice to the Notice Parties of such extension and the terms of such extension) shall be as set forth in the Loan Agreement, but without regard to the Default currently existing under (and as defined in) the Loan Agreement by virtue of the pendency of the Involuntary Petitions. As used herein, the term "*Basic Funding Conditions*" means that (a) no Default under the Loan Agreement occurs or exists other than a Default arising from the pendency of the Involuntary Petitions; (b) no Event of Default under (and as defined in) the Loan Agreement occurs or exists other than the Facility Obligors' failure to cause the Involuntary Petitions to be dismissed within 60 days after the Involuntary Petition Date; (c) Borrowers have complied with all of the terms and conditions of the Loan Agreement; and (d) no Overadvance exists (either immediately prior, or after giving effect, to any proposed use of Cash Collateral or the funding of any Gap Credit Extension). The term "*Non-Discretionary Funding Conditions*" means (x) each of the Basic Funding Conditions

has been satisfied; and (y) the Affiliate Loan Documents have been duly executed by the parties thereto, the Affiliate Loan Facility has been established thereunder as a committed unsecured revolving credit facility available to the Facility Obligors in an aggregate amount outstanding at any time of at least $3 million, and no event of default exists under any of the Affiliate Loan Documents.  All Gap Credit Extensions shall constitute Obligations under (and as defined in) the Loan Agreement and shall be deemed to be secured by the Pre-Petition Liens upon the Pre-Petition Collateral and all proceeds thereof and by additional first priority security interests and liens (which are hereby granted by the Court in favor of the Lender and which shall be deemed automatically perfected without the necessity of any filing or recording) with respect to all of the Collateral.  The Pre-Petition Liens with respect to the Pre-Petition Collateral, solely to the extent securing the Gap Credit Extensions, shall be deemed valid, perfected and unavoidable under Section 549 of the Bankruptcy Code or otherwise.  Any payments made during the Gap Period by any Facility Obligor with respect to any of the Obligations under (and as defined in) the Loan Agreement (which Obligations shall be inclusive of all Pre-Petition Debt, Cash Management Obligations and Gap Credit Extensions) may be applied by the Lender to the Gap Credit Extensions or amounts authorized to be paid pursuant to paragraphs 5 or 7 of this Final Order, in such order of payment as the Lender may elect in its sole discretion, and the Lender shall be authorized, on a final basis pursuant to this Final Order and in its sole discretion, to accept or decline payment with respect to any of the Pre-Petition Debt.  In no event shall any payment during the Gap Period with respect to any of the Gap Credit Extensions or any Obligations authorized or required to be paid pursuant to paragraphs 5 or 7 of this Final Order be recoverable under Section 549 of the Bankruptcy Code, because all such payments shall be deemed to be for value received within the meaning of Section 549 of the Bankruptcy Code.  The Guaranty

Agreements shall continue in effect with respect to all Obligations, including all Gap Credit Extensions. The Lender shall have no responsibility for any Borrower's use of any Gap Credit Extension. No proceeds of Gap Credit Extensions may be used by any Alleged Debtor that is not a Facility Obligor.

7. <u>Continuation of Cash Management System</u>. The authorization in the Interim Order for the Facility Obligors to continue to use the Cash Management System during the Gap Period, and the Lender to continue to make the Cash Management System available to the Facility Obligors for such use, is hereby ratified, confirmed and approved on a final basis pursuant to this Final Order. Any Cash Management Obligations incurred by any Facility Obligor after the Involuntary Petition Date (and, for the avoidance of doubt, any indebtedness arising from checks deposited to any Facility Obligor's bank account prior to the Involuntary Petition Date but returned unpaid thereafter, as well as any fees and charges (including corporate credit card charges) incurred in connection with the Cash Management System that first become due and payable after the Involuntary Petition Date, shall be deemed to be Cash Management Obligations incurred after the Involuntary Petition Date) shall be secured by both the Pre-Petition Liens and by first priority post-petition security interests and liens and rights of offset (which post-petition security interests, liens and rights of offset were granted in favor of the Lender by the Interim Order, are continued in effect by this Final Order, and shall be deemed to be automatically perfected without the necessity of any filing or recording). Without limiting the generality of the foregoing, (a) the Facility Obligors were authorized by the Interim Order, which authorization is hereby ratified, confirmed and approved on a final basis pursuant to this Final Order, to make deposits to, and cause transfers to be made from, each bank account maintained by a Facility Obligor at the Lender, including ACH transfers and wire transfers initiated by a

- 20 -

Facility Obligor from any such bank account, and (b) the Lender was authorized by the Interim Order, which authorization is hereby ratified, confirmed and approved on a final basis pursuant to this Final Order, to honor any checks at any time drawn by any Facility Obligor on any such bank account, whether drawn prior to or after the Involuntary Petition Date and whether relating to, or in payment of, an obligation incurred prior to or after the Involuntary Petition Date; provided, however, that nothing herein shall require the Lender to extend any credit to any Facility Obligor in connection with any bank account (whether by overdraft, ACH transfer or otherwise), but the Lender may do so in its sole discretion pursuant to any pre-petition agreement with a Facility Obligor relating to any aspect of the Cash Management System. The Lender was authorized by the Interim Order, which authorization is hereby ratified, confirmed and approved on a final basis pursuant to this Final Order, to allow the Facility Obligors to continue to use all corporate credit cards, and the Facility Obligors were authorized by the Interim Order, which authorization is hereby ratified, confirmed and approved on a final basis pursuant to this Final Order, to incur and repay indebtedness to the Lender in connection therewith. As authorized by the Interim Order, which authorization is hereby ratified, confirmed and approved on a final basis pursuant to this Final Order, the Lender may continue to administer, and the Facility Obligors may continue to utilize, all aspects of the Cash Management System, including, without limitation, all lockboxes and bank accounts at the Lender, as if the filing of the Involuntary Petitions had not occurred and, in connection therewith, Lender may honor stop payment orders initiated by a Facility Obligor with respect to any check; charge any bank account with all fees and expenses constituting Cash Management Obligations; offset any deposit balances in any bank account against overdrafts, charges related to such bank account or any other Cash Management Obligations; and receive and retain all offsets and payments authorized or required

to be made with respect to any Cash Management Obligations (including corporate credit card payments and bank account charges). In no event shall any payment authorized to be made to the Lender pursuant to this paragraph 7 be recoverable under Section 549 of the Bankruptcy Code, because all such payments shall be deemed to be for value received within the meaning of Section 549 of the Bankruptcy Code. The foregoing provisions of this Final Order shall be without prejudice to the right, if any, of any Facility Obligor to recover from the payee of any check or other item of payment (other than the Lender or BALC as recipients of any payments authorized by the Interim Order or this Final Order) any sums paid to such payee pursuant to Section 549(a) of the Bankruptcy Code. As used herein, the term "Cash Management Obligations" shall mean all indebtedness and liabilities that arise pursuant to or in connection with the Cash Management System, whether prior to or after the Involuntary Petition Date, and that consist of (i) fees (including analysis charges) and expenses charged by the Lender for demand depository, lockbox and other accounts at any time maintained by a Facility Obligor at the Lender; (ii) indebtedness (including fees) arising from ACH or wire transfers and transfers of balances among bank accounts of Facility Obligors at the Lender; (iii) indebtedness (including fees) associated with overdrafts, returned checks and stop payment orders; (iv) indebtedness (including fees) associated with corporate credit cards issued by the Lender; and (v) all other customary fees and charges of the Lender in connection with the provision of any treasury management services to any Facility Obligor.

8.      <u>Good Faith Under Section 364(e) of the Bankruptcy Code; No Modification of this Final Order</u>. The Affiliate Lender, the Lender and BALC have acted in good faith in connection with this Final Order and their reliance on this Final Order is in good faith. Based on the findings set forth in this Final Order and the record made during the Interim Hearing and the

Final Hearing, and in accordance with Section 364(e) of the Bankruptcy Code, in the event that any or all of the provisions of this Final Order are hereafter modified, amended or vacated by a subsequent order of this Court or any other court, the Affiliate Lender, the Lender and BALC are entitled to the protections provided in Section 364(e) of the Bankruptcy Code. Any such modification, amendment or vacatur shall not affect the validity and enforceability of any advances previously made or made hereunder, or lien created, or authorized hereby to continue, with respect to any Collateral. Any liens granted to or continued in favor of the Lender hereunder and attaching to any Collateral prior to the effective date of any such modification, amendment or vacatur of this Final Order shall be governed in all respects by the original provisions of this Final Order, including, without limitation, entitlement to all rights, remedies, privileges and benefits granted herein.

9.      No Adjudication; Limitations on Authority.  Nothing in this Final Order shall (a) constitute a determination by this Court of (i) the amount, validity or enforceability of any of the Pre-Petition Debt, (ii) the validity, extent, perfection or priority of any of the Pre-Petition Liens with respect to the Pre-Petition Debt or BALC Leasing Obligations, or (iii) the validity or enforceability of any of the Loan Documents; provided, however, that no objection or challenge may be asserted based on the contention that the advances or obligations that arose during the Gap Period or the property to which the security interests or liens attached in accordance with this Final Order was created or acquired by a Facility Obligor during the Gap Period; (b) impair the right of any interested party having standing to do so to challenge the validity, extent, perfection or priority of the Pre-Petition Liens as security for the Pre-Petition Debt or the BALC Leasing Obligations; (c) impair the right of any holder of senior notes (or the indenture trustees with respect to such notes) issued by Vitro and/or guaranteed by any of the Alleged Debtors

(collectively, the "*Notes*") with respect to the Affiliate Funding, including, without limitation, any rights under the applicable indentures governing the Notes; or (d) be construed to grant to the Lender or BALC relief from the stay to exercise default remedies of foreclosure or otherwise upon its Pre-Petition Liens with respect to any Pre-Petition Debt or any Gap Credit Extensions or to exercise any rights to offset any bank account of a Facility Obligor against any Pre-Petition Debt or Gap Credit Extensions other than offsets to pay Cash Management Obligations or an Overadvance (provided that no such offset in respect of any Overadvance exceeds the outstanding amount of GAP Credit Extensions at the time of such offset).  Notwithstanding anything to the contrary in this Final Order, nothing in this Final Order shall prejudice or impair the right (if any) of any party in interest having standing to do so to recover any payment made to the Lender during the Gap Period with respect to and applied to any Pre-Petition Debt (including, for the avoidance of doubt, any adequate protection payments or bank account offset in respect of any Overadvance to the extent such payments are applied to repayment of the Pre-Petition Debt) pursuant to Chapter 5 of the Bankruptcy Code to the extent that it is subsequently determined by final order of the Court that (x) the Pre-Petition Liens securing such Pre-Petition Debt were, on the Involuntary Petition Date, invalid, unperfected, unenforceable or are otherwise avoided or recharacterized, and (y) the Pre-Petition Debt paid did not constitute Cash Management Obligations that are authorized to be paid to the Lender pursuant to paragraph 7 of this Final Order, or impair or restrict any defense that the Lender may have to any such attempted recovery.  In no event shall any payments made to the Lender with respect to any Gap Credit Extensions or Cash Management Obligations be recoverable.

10.     Rights Preserved.  Nothing herein shall prejudice or impair in any way the right of the Affiliate Lender, the Lender or BALC to seek other or additional relief in these involuntary

Chapter 11 cases, including, without limitation, further protection of their interests in any property of any Facility Obligor, relief from the automatic stay (whether to enforce security interests or other liens of Lender or BALC, effectuate offsets not otherwise expressly authorized in this Final Order or to exercise other default remedies available to Lender or BALC under any agreement or applicable law), and the imposition of additional restrictions of any Facility Obligor's authority to use any Collateral. Notwithstanding anything herein to the contrary, the entry of this Final Order is without prejudice to, and does not constitute a waiver of, expressly or implicitly, the Facility Obligors', the Petitioners' or any party in interest's right to oppose any of the relief requested in accordance with the immediately preceding sentence except as expressly set forth in this Final Order.

11. <u>Effectiveness of this Final Order</u>. This Final Order shall be effective *nunc pro tunc* to the Involuntary Petition Date, constitute findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052 (subject in all cases to the qualifications in footnote 2 above), and shall take effect and be enforceable immediately upon entry hereof notwithstanding any contrary Bankruptcy Rule, and there shall be no stay of execution or effectiveness of this Final Order. The authorization for ongoing advances under the Loan Agreement, the Affiliate Funding and the use of Cash Collateral pursuant to this Final Order shall be effective only through the Gap Period or as otherwise provided in this Final Order.

12. <u>Retention of Jurisdiction</u>. This Court has and will retain jurisdiction to enforce this Final Order according to its terms.

****** END OF ORDER ******