| | |
|---|---|
| **Dennis F. Dunne (admitted *pro hac vice*)** | **Louis R. Strubeck, Jr.** |
| **Risa M. Rosenberg (admitted *pro hac vice*)** | **State Bar No. (19425600)** |
| **MILBANK, TWEED, HADLEY & MᶜCLOY LLP** | **William R. Greendyke** |
| **1 Chase Manhattan Plaza** | **State Bar No. (08390450)** |
| **New York, NY 10005-1413** | **FULBRIGHT & JAWORSKI L.L.P.** |
| **Tel: (212) 530-5000** | **2200 Ross Avenue, Suite 2800** |
| **Fax: (212) 530-5219** | **Dallas, Texas 75201** |
| **ddunne@milbank.com** | **Tel: (214) 855-8000** |
| **rrosenberg@milbank.com** | **Fax: (214) 855-8200** |
| | **lstrubeck@fulbright.com** |
| **Andrew M. Leblanc (admitted *pro hac vice*)** | **wgreendyke@fulbright.com** |
| **MILBANK, TWEED, HADLEY & MᶜCLOY LLP** | |
| **1850 K Street, NW, Suite 1100** | **Counsel for the Alleged Debtors** |
| **Washington, DC 20006** | |
| **Tel: (202) 835-7500** | |
| **Fax: (202) 263-7586** | |
| **aleblanc@milbank.com** | |
| | |
| **Counsel to Vitro, S.A.B. de C.V.** | |

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE NORTHERN DISTRICT OF TEXAS
# FORT WORTH DIVISION

| | | |
|---|---|---|
| In re: | § § | Involuntary Chapter 11 |
| **VITRO ASSET CORP., et al.,** | § § § | Case No. 10-47470-rfn-11 |
| Alleged Debtors.[1] | § § § | Jointly Administered |

### EMERGENCY MOTION OF CERTAIN ALLEGED DEBTORS FOR INTERIM AND FINAL ORDERS, PURSUANT TO 11 U.S.C. §§ 105, 303, 363, AND 364, (I) APPROVING AMENDMENT OF THE TERMS OF THE FINAL FINANCING ORDER AND (II) SCHEDULING FINAL HEARING

Vitro America and VVP Finance (the "Initial Borrowers"), VVP Holdings, Auto Glass, Super Sky International, and Super Sky Products (the "Initial Guarantors" and, together with the

---

[1] The Alleged Debtors are: Vitro Asset Corp. (f/k/a American Asset Holdings Corp.) (Case No. 10-47470) ("Asset Corp."), Vitro Chemicals, Fibers & Mining, LLC (Case No. 10-47472) ("Chemicals"), Vitro America, LLC ("Vitro America") (Case No. 10-47473), Troper Services, Inc. (Case No. 10-47474) ("Troper"), Super Sky Products, Inc. ("Super Sky Products") (Case No. 10-47475), Super Sky International, Inc. ("Super Sky International") (Case No. 10-47476), VVP Holdings, LLC ("VVP Holdings") (Case No. 10-47477), Amsilco Holdings, Inc. (Case No. 10-47478) ("Amsilco"), B.B.O. Holdings, Inc. (Case No. 10-47479) ("BBO"), Binswanger Glass Company (f/k/a Troper Inc.) (Case No. 10-47480) ("Binswanger"), Crisa Corporation (Case No. 10-47481) ("Crisa"), VVP Finance Corporation ("VVP Finance") (Case No. 10-47482), VVP Auto Glass, Inc. ("Auto Glass") (Case No. 10-47483), V-MX Holdings, LLC (f/k/a Crisa Holdings Corp.) (Case No. 10-47484) ("V-MX"), and Vitro Packaging, LLC (Case No. 10-47485) ("Packaging").

Initial Borrowers, in their capacity as obligors under the Loan Agreement (as defined below), the "Initial Obligors" and, in their capacity as obligors under the Affiliate Loan Agreement (as defined below), the "Borrowers"), six of the alleged debtors (collectively, the "Alleged Debtors") in the above-captioned involuntary Chapter 11 cases (the "Involuntary Cases"), hereby move for entry of an interim order, substantially in the form annexed as Exhibit A hereto (the "Interim Order"), and a final order (the "Final Order"), pursuant to Sections 105, 303(f), 363, and 364 of title 11 of the United States Code, 11 U.S.C. §§ 101 et seq. (the "Bankruptcy Code") and Rules 2002, 4001 and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), approving amendment of the terms of the Final Financing Order (as defined below) and scheduling a final hearing (the "Final Hearing") with respect to the relief requested herein (the "Motion").

**Background**

**A.    Introduction**

1.    On November 17, 2010 (the "Involuntary Petition Date"), Knighthead Master Fund, L.P., Brookville Horizons Fund, L.P., Davidson Kempner Distressed Opportunities Fund, LP, and Lord Abbett Bond-Debenture Fund, Inc., as alleged creditors (collectively, the "Petitioning Creditors"), filed involuntary petitions for the entry of orders for relief with respect to the Alleged Debtors under Chapter 11 of the Bankruptcy Code (the "Involuntary Petitions"). The hearing concerning whether to enter orders for relief pursuant to the Involuntary Petitions is set to commence on March 31, 2011.

2.    As authorized by Section 303(f) of the Bankruptcy Code, the Alleged Debtors continue to operate their businesses and use, acquire or dispose of property as if the Involuntary Cases had not been commenced. No trustee or examiner has been requested or appointed in any of the Involuntary Cases.

3. The Alleged Debtors are wholly-owned indirect subsidiaries of Vitro, S.A.B. ("Vito SAB"), a corporation organized under the laws of the United Mexican States, which maintains its principal place of business in Monterrey, Mexico (together with its direct and indirect affiliates, "Vitro"). Vitro is one of the largest glass manufacturers in the world.

4. The filing of the Involuntary Petitions constituted a Default under (and as defined in) that certain Loan and Security Agreement dated as of June 27, 2003 (hereinafter, together with all amendments thereto and modifications thereof, the "Loan Agreement"), between the Initial Obligors and Bank of America, N.A. (in its capacity as the prepetition secured lender, the "Prepetition Secured Lender"). As a consequence of the occurrence of the Default under the Loan Agreement, the Prepetition Secured Lender's willingness to continue lending to the Initial Borrowers was conditioned upon the Initial Obligors obtaining, and the Court approving, certain protections in favor of the Prepetition Secured Lender, for itself and for Banc of America Leasing & Capital, LLC ("BALC" and, together with the Prepetition Secured Lender, the "Prepetition Secured Parties"). On November 22, 2010, certain Alleged Debtors and the Prepetition Secured Parties filed a *Joint Emergency Motion for Interim and Final Orders, Pursuant to 11 U.S.C. §§ 105, 303, 361, 363, 364 and 552, (I) Authorizing Alleged Debtors (A) to Continue to Obtain Secured Financing, (B) to Continue to Utilize Existing Cash Management System and (C) to Use Cash Collateral, (II) Approving Post-Petition Financing, (III) Granting Adequate Protection and (IV) Scheduling Interim and Final Hearings* (the "Initial Financing Motion") [Dkt. No. 22].

5. Following a hearing on the Initial Financing Motion, the Court entered an interim order (the "Initial Financing Order") [Dkt. No. 60] and subsequently, on January 21, 2011 [Dkt. No. 137], a final order (the "Final Financing Order") granting, in part, the Initial Financing Motion. Pursuant to the Initial and Final Financing Orders, the Court authorized the Initial

#4831-7522-8936v5

-3-

Borrowers, during the Gap Period (as defined below), <u>inter</u> <u>alia</u>, to continue obtaining secured financing from the Prepetition Secured Lender, as well as to obtain unsecured postpetition financing (the "<u>Affiliate Financing</u>") from Vitro SAB and another non-Debtor affiliate, FIC Regiomontano, S.A.P.I. de C.V. ("<u>FIC</u>" and, together with Vitro SAB, the "<u>Affiliated Lenders</u>").

6. The Court, however, denied the request to grant to the Affiliated Lenders, with respect to any advances they were to make under the Affiliate Financing during the Gap Period, security interests in and liens upon the Collateral (as defined in the Final Financing Order), which liens were to be junior to the Prepetition Liens (as defined in the Final Financing Order) in all respects. Notwithstanding such denial, the Court did permit the Affiliated Lenders to renew their request for security interests in and liens upon the Collateral.

7. At the time of the entry of the Final Financing Order, the Alleged Debtors anticipated requiring approximately $1,500,000 per month (for the first six months of the year) funding from the Affiliated Lenders to meet their ongoing operational needs. However, in light of the onslaught of adverse publicity caused by the filing of the Involuntary Petitions, (a) certain of the Alleged Debtors' vendors have insisted on more stringent trade terms, such as requiring cash on delivery, (b) certain of the Alleged Debtors have been informed that they cannot submit bids on construction projects due to their status as Alleged Debtors and the uncertainty caused by the filing of the Involuntary Petitions and (c) certain projects originally committed to certain of the Alleged Debtors have now been committed to competitors due to the uncertainty caused by the filing of the Involuntary Petitions. As a result, to meet their ongoing operational needs, the Alleged Debtors now require as much as $3,500,000 per month from the Affiliated Lenders, or $2,500,000 per month more than contemplated by the Affiliated Lenders at the time the Initial Financing Motion was filed.

8. The Affiliated Lenders have indicated they are willing to continue to extend credit to the Alleged Debtors sufficient to meet the Alleged Debtors' current operational needs, but will only agree to do so on a secured basis. Without the extension of credit by the Affiliated Lenders, the Alleged Debtors will not be able to meet their ongoing obligations.

9. Accordingly, the Alleged Debtors believe that amending the Final Financing Order to (a) authorize the Borrowers to execute and deliver the Affiliate Loan Agreement (as defined below), and (b) grant to the Affiliated Lenders automatically perfected second priority security interests in and liens upon all of the Collateral to secure the advances, if any, made under the Affiliate Loan Agreement during the Gap Period, will enable them to avoid immediate and irreparable harm pending the Final Hearing.

10. Pursuant to Bankruptcy Rule 4001, below is a summary of the principal terms of the Affiliate Loan Agreement:[2]

| **Affiliated Lenders:** | Vitro SAB and FIC |
|---|---|
| **Borrowers:** | Vitro America, VVP Finance, VVP Holdings, Auto Glass, Super Sky International, and Super Sky Products |
| **Affiliate Financing:** | Term loans, at the Affiliated Lenders' discretion, up to an aggregate principal amount of $3.5 million at any one time outstanding *nunc pro tunc* to March 15, 2011, and thereafter, additional term loans in the Affiliated Lenders' discretion. |
| **Termination Date:** | The earliest to occur of (i) the Stated Termination Date and (ii) the date the Affiliate Loan Agreement is otherwise terminated for any reason whatsoever pursuant to the terms of the Affiliate Loan Agreement.<br><br>The "Stated Termination Date" is the same as in the Loan Agreement. |
| **Use of Proceeds:** | General corporate purposes, subject to any |

---

2 This summary is qualified in its entirety by the provisions of the Affiliate Loan Agreement and the Interim Order.

| | |
|---|---|
| | limitations in the Interim and Final Orders, as applicable. |
| **Interest Rate:** | 5.25% |
| **Default Interest:** | 2.00% per annum in excess of the otherwise applicable interest rate |
| **Fees:** | None |
| **Affiliate Liens:** | All obligations under the Affiliate Loan Agreement will be secured by properly perfected second priority security interests and liens pursuant to Section 364(c)(3) of the Bankruptcy Code upon the Collateral (as defined in the Final Financing Order).<br><br>The Affiliate Liens shall be junior only to all liens in favor of the Prepetition Secured Parties and any other valid, perfected and enforceable nonavoidable liens existing as of the Involuntary Petition Date. |
| **Events of Default:** | (a) any failure by the Borrowers to pay principal or interest when due, whether upon demand or otherwise;<br><br>(b) the Interim Order is not entered within five days of the hearing on this Motion;<br><br>(c) the Final Order is not entered within five days of the Final Hearing;<br><br>(d) the occurrence, after the date hereof, of any "Event of Default" under the Loan Agreement. |
| **Remedies on Events of Default:** | Upon an Event of Default, the Affiliated Lenders may, do one or more of the following, without notice to or demand on any Borrower: (A) terminate the Affiliate Loan Agreement; (B) declare any or all obligations under the Affiliate Loan Agreement to be immediately due and payable; and (C) pursue its other rights and remedies under the Affiliate Loan Agreement and applicable law. |

## **Jurisdiction and Venue**

11. This Court has jurisdiction to consider this Motion under 28 U.S.C. §§ 157 and 1334. This is a core proceeding under 28 U.S.C. § 157(b). Venue in this district is proper under

28 U.S.C. §§ 1408 and 1409. The statutory bases for the relief requested herein are sections 105, 303(f), 363, and 364 of the Bankruptcy Code.

## Relief Requested

12. By this Motion, the Alleged Debtors seek entry of the Interim and Final Orders, inter alia:

(a) under Bankruptcy Code Section 364(c)(3), authorizing the Borrowers to obtain secured postpetition financing on a junior lien basis (the "Affiliate Loan Facility") pursuant to the terms and conditions of that certain Subordinated Loan and Security Agreement, dated as of the date of approval by this Court (as amended, supplemented, restated or otherwise modified from time to time, the "Affiliate Loan Agreement"), between the Borrowers and the Affiliated Lenders, substantially in the form of Exhibit B annexed hereto, during the period from the date of entry of the Interim Order to the earlier to occur of (i) entry of an order for relief against any Borrower or (ii) dismissal of the Involuntary Petitions (the "Gap Period");

(b) authorizing the Alleged Debtors to execute and deliver the Affiliate Loan Agreement and other related loan documents (collectively with the Affiliate Loan Agreement, the "Affiliate Loan Documents") among the Borrowers and the Affiliated Lenders, and to perform such other acts as may be necessary or desirable in connection with the Affiliate Loan Agreement;

(c) granting to the Affiliated Lenders automatically perfected security interests in and liens on all of the Collateral, including, without limitation, all property constituting Cash Collateral (as defined in the Final Financing Order), which liens shall be junior to all liens granted in favor of the Prepetition Secured Parties in all respects, to secure the advances, if any, made under the Affiliate Loan Agreement;

(d) authorizing the Alleged Debtors, from entry of the Interim Order until the Final Hearing, to obtain credit under the terms contained the Affiliate Loan Agreement; and

(e) pursuant to Bankruptcy Rule 4001, scheduling the Final Hearing and establishing notice procedures in respect thereof to consider entry of the Final Order.

## Basis for Relief

13. The Alleged Debtors request entry of the Interim Order pursuant to Sections 105, 303(f), 363, and 364 of the Bankruptcy Code. Section 303(f) of the Bankruptcy Code permits the Alleged Debtors to continue to use, acquire or dispose of their respective properties during the Gap Period as if the Involuntary Petitions had not been filed. Section 303(f) provides:

> Notwithstanding section 363 of this title, except to the extent that the court orders otherwise, and until an order for relief in the case, any business of the debtor may continue to operate, and the debtor may continue to use, acquire, or dispose of property as if an involuntary case concerning the debtor had not been commenced.

11 U.S.C. § 303(f); see also In re QDN, LLC, 363 Fed. Appx. 873, 878 (3d Cir. 2010) ("Unless and until an order for relief is granted, an involuntary filing has no effect on the affairs of the debtor."). Section 364(c) of the Bankruptcy Code, in turn, provides:

> (c) If the trustee is unable to obtain unsecured credit allowable under section 503(b)(1) of this title as an administrative expense, the court, after notice and a hearing, may authorize the obtaining of credit or the incurring of debt—
>
> (3) secured by a junior lien on property of the estate that is subject to a lien.

11 U.S.C. § 364(c)(3).

14. The Alleged Debtors' need to obtain credit on an interim basis pursuant to the Affiliate Loan Agreement is immediate and critical to enable the Alleged Debtors to continue to finance their operations, maintain business relationships with their vendors, suppliers and customers. The damage caused to the Alleged Debtors' businesses by the adverse publicity surrounding the filing of the Involuntary Petitions, including the modification of normal credit terms by vendors to cash on delivery, coupled with the recent decrease in the Alleged Debtors' sales (which, in turn, has resulted in a decrease in availability under the Loan Agreement), create a potentially dire situation for the Alleged Debtors' ability to continue to operate. Without immediate additional funding from the Affiliated Lenders, the Alleged Debtors may be unable to make up operational shortfalls and certain capital expenditures, pay down debt, pay their vendors and counterparties or pay other existing obligations.

15. The Affiliated Lenders have represented that they are no longer willing to extend the Affiliate Financing on an unsecured basis. Given the Alleged Debtors' immediate need for liquidity, the Alleged Debtors and their advisors sought postpetition financing from sources other

than the Affiliated Lenders. Specifically, the Debtors entered into confidentiality agreements with, provided information to, and engaged in discussions with 45 financial institutions, including, but not limited to, Ableco Finance, LLC, Bayside Capital, Inc., Garrison Investment Group, L.P., GE Commercial Finance, Gordon Brothers Group, LLC, and Tennenbaum Capital Partners, LLC. Each of the financial institutions contacted is a sophisticated commercial entity with more than adequate financial resources to make financing available to the Alleged Debtors. However, none of the institutions contacted was willing to provide financing to the Alleged Debtors on the same terms as proposed by the Affiliated Lenders. Thus, the Alleged Debtors were unable to obtain alternative financing proposals from other lenders for any credit allowable as an administrative expense or secured by liens on the Alleged Debtors' assets junior to the liens of the Prepetition Secured Lenders.

16. Given the irreparable harm that will result if the Affiliate Financing is not available to the Alleged Debtors, the Alleged Debtors have agreed to grant the Affiliated Lenders the security interests and the liens they have requested, in exchange for an initial extension of credit, at the Affiliate Lenders' discretion, up to an aggregate principal amount of $3.5 million at any one time outstanding *nunc pro tunc* to March 15, 2011,[3] and thereafter, additional term loans in the Affiliated Lenders' discretion.

17. The Prepetition Secured Parties have consented to this secured financing arrangement, subject to the requirement that the Affiliated Lenders execute a subordination agreement (the "<u>Subordination Agreement</u>") in form and substance satisfactory to the Prepetition Secured Parties providing that (a) the Affiliate Liens (as defined in the Interim Order) shall be junior to all liens granted in favor of the Prepetition Secured Parties, including, without

---

[3] To prevent such immediate and irreparable harm to the Alleged Debtors, the Affiliated Lenders extended to the Borrowers $700,000 on March 15, 2011, on the understanding and subject to the condition that the Alleged Debtors would seek *nunc pro tunc* approval of such extension of credit on a secured basis.

#4831-7522-8936v5

limitation, the Pre-Petition Liens (as defined in the Final Financing Order), equipment liens granted to BALC as security for the BALC Leasing Obligations (as defined in the Final Financing Order), and liens granted in favor of the Prepetition Secured Parties pursuant to either the Interim Financing Order or the Final Financing Order, and (b) the Affiliate Obligations (as defined in the Interim Order) shall be subordinated to the indefeasible payment in full of the Obligations under (and as defined in) the Loan Agreement, including, without limitation, the Pre-Petition Debt and the Gap Credit Extensions (as these terms are defined in the Final Financing Order).

18. The entry into the Affiliate Loan Agreement was negotiated in good faith and at arm's length among the Alleged Debtors and the Affiliated Lenders. The Alleged Debtors respectfully submit that the relief requested herein is not prejudicial to any party in interest in that it will only be effective through the Gap Period, and does not seek a determination by the Court of (a) the amount, validity or enforceability of any of the Pre-Petition Debt (as defined in the Final Financing Order), or (b) the validity, extent, perfection or priority of any of the Prepetition Liens with respect to the Pre-Petition Debt. Importantly, except as specifically provided for herein, the relief sought in this Motion expressly does not modify or affect the relief granted in the Final Financing Order.

19. The granting of the foregoing protections and assurances is consistent with the statutory predicates cited herein and is designed to foster and facilitate the continuation and stability of the businesses of the Alleged Debtors. In the absence of the Affiliate Loan Facility, the Alleged Debtors may be forced to cease operations altogether. Thus, the Alleged Debtors request entry of the Interim Order granting the relief requested herein.

## Notice

20. The Alleged Debtors certify that notice of this Motion will be given by them to: (i) the Office of the United States Trustee for the Northern District of Texas, (ii) counsel to the Prepetition Secured Parties, (iii) the Affiliated Lenders, (iv) counsel to the Petitioning Creditors and (v) all parties who have requested notice in these Involuntary Cases (collectively, the "<u>Initial Notice Parties</u>"). The Alleged Debtors submit that, under the circumstances, no further notice of the hearing on the interim financing is necessary and request that any further notice be dispensed with and waived.

21. The Alleged Debtors further respectfully request that the Court schedule the Final Hearing and authorize them to mail copies of the signed Interim Order, which fixes the time, date and manner for the filing of objections, to the Initial Notice Parties and any party that has filed prior to such date a request for notices with this Court. The Alleged Debtors request that the Court consider such notice of the Final Hearing.

WHEREFORE, the Alleged Debtors respectfully request that the Court (i) enter an order substantially in the form of the proposed Interim Order; (ii) after the Final Hearing, enter the Final Order substantially in the form that shall be filed with the Court; and (iii) grant such other and further relief as this Court may deem just and proper.

Dated: March 16, 2011

Respectfully submitted,

/s/ Louis R. Strubeck, Jr.
Louis R. Strubeck, Jr., Esq.,
State Bar No. 19425600
William R. Greendyke, Esq.
State Bar No. 08390450
FULBRIGHT & JAWORSKI L.L.P.
2200 Ross Avenue, Suite 2800
Dallas, Texas 75201
Telephone:	214-855-8000
Telecopy:	214-855-8200

-and-

/s/ Dennis F. Dunne
Dennis F. Dunne, Esq.
Milbank, Tweed, Hadley & M$^c$Cloy LLP
Dennis F. Dunne (admitted *pro hac vice*)
Risa M. Rosenberg (admitted *pro hac vice*)
1 Chase Manhattan Plaza
New York, New York 10005-1413
Telephone: (212) 530-5000
Facsimile: (212) 530-5219

-and-

Andrew M. Leblanc (admitted *pro hac vice*)
1850 K Street, NW, Suite 1100
Washington, DC 20006
Telephone: (212) 835-7500
Facsimile: (212) 263-7586

*Counsel for the Alleged Debtors*

## CERTIFICATE OF SERVICE

This certifies that the foregoing was served on March 16, 2011, (i) the Office of the United States Trustee for the Northern District of Texas, (ii) counsel to the Prepetition Secured Parties, (iii) counsel to the Affiliated Lenders, (iv) counsel to the Petitioning Creditors and (v) all parties who have requested notice in these Involuntary Cases.

/s/ Gregory M. Wilkes
Gregory M. Wilkes

## CERTIFICATE OF CONFERENCE

This certifies that, on March 16, 2011, undersigned counsel attempted to conference with John Cunningham and Jeff Prostok regarding the Alleged Debtors' requested relief by email and phone. As of the time of the filing of this Motion, undersigned counsel did not receive a response from either Mr. Prostok or Mr. Cunningham. Therefore, for purposes of this Motion, the Petitioning Creditors are opposed to relief requested herein.

/s/ Gregory M. Wilkes
Gregory M. Wilkes