# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE NORTHERN DISTRICT OF TEXAS
# FORT WORTH DIVISION

| | § | |
|---|---|---|
| In re: | § | Involuntary Chapter 11 |
| | § | |
| **VITRO ASSET CORP., <u>et al.</u>,** | § | Case No. 10-47470-rfn-11 |
| | § | |
| Alleged Debtors.[1] | § | Jointly Administered |
| | § | |

## INTERIM ORDER PURSUANT TO 11 U.S.C. §§ 105, 303, 363, AND 364, (I) APPROVING AMENDMENT OF THE TERMS OF THE FINAL FINANCING ORDER AND (II) SCHEDULING FINAL HEARING

This matter came on for hearing on March 24, 2011 (the "<u>Interim Hearing</u>") on the Emergency Motion (the "<u>Motion</u>") of Vitro America and VVP Finance (the "<u>Initial Borrowers</u>"),

---

[1] The Alleged Debtors are: Vitro Asset Corp. (f/k/a American Asset Holdings Corp.) (Case No. 10-47470) ("<u>Asset Corp.</u>"), Vitro Chemicals, Fibers & Mining, LLC (Case No. 10-47472) ("<u>Chemicals</u>"), Vitro America, LLC ("<u>Vitro America</u>") (Case No. 10-47473), Troper Services, Inc. (Case No. 10-47474) ("<u>Troper</u>"), Super Sky Products, Inc. ("<u>Super Sky Products</u>") (Case No. 10-47475), Super Sky International, Inc. ("<u>Super Sky International</u>") (Case No. 10-47476), VVP Holdings, LLC ("<u>VVP Holdings</u>") (Case No. 10-47477), Amsilco Holdings, Inc. (Case No. 10-47478) ("<u>Amsilco</u>"), B.B.O. Holdings, Inc. (Case No. 10-47479) ("<u>BBO</u>"), Binswanger Glass Company (f/k/a Troper Inc.) (Case No. 10-47480) ("<u>Binswanger</u>"), Crisa Corporation (Case No. 10-47481) ("<u>Crisa</u>"), VVP Finance Corporation ("<u>VVP Finance</u>") (Case No. 10-47482), VVP Auto Glass, Inc. ("<u>Auto Glass</u>") (Case No. 10-47483), V-MX Holdings, LLC (f/k/a Crisa Holdings Corp.) (Case No. 10-47484) ("<u>V-MX</u>"), and Vitro Packaging, LLC (Case No. 10-47485) ("<u>Packaging</u>").

VVP Holdings, Auto Glass, Super Sky International, and Super Sky Products (the "Initial Guarantors" and, together with the Initial Borrowers, in their capacity as obligors under the Loan Agreement (as defined below), the "Initial Obligors") and, in their capacity as obligors under the Affiliate Loan Agreement (as defined below), the "Borrowers"), six of the alleged debtors (collectively, the "Alleged Debtors") in the above-captioned involuntary Chapter 11 cases (the "Involuntary Cases"), pursuant to Sections 105, 303(f), 363, and 364 of title 11 of the United States Code, 11 U.S.C. §§ 101 et seq. (the "Bankruptcy Code") and Rules 2002, 4001 and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), seeking entry of an interim order (the "Interim Order"):

(i) under Bankruptcy Code Section 364(c)(3), authorizing the Borrowers to obtain secured postpetition financing on a junior lien basis (the "Affiliate Loan Facility") pursuant to the terms and conditions of that certain Subordinated Loan and Security Agreement, dated as of March [__], 2011 (as amended, supplemented, restated or otherwise modified from time to time, the "Affiliate Loan Agreement"), between the Borrowers and the Affiliated Lenders (as defined below), during the period from the date of entry of the Interim Order to the earlier to occur of (i) entry of an order for relief against any Borrower or (ii) dismissal of the Involuntary Petitions (the "Gap Period");

(ii) authorizing the Alleged Debtors to execute and deliver the Affiliate Loan Agreement and other related loan documents (collectively with the Affiliate Loan Agreement, the "Affiliate Loan Documents") among the Borrowers and the Affiliated Lenders, and to perform such other acts as may be necessary or desirable in connection with the Affiliate Loan Agreement;

(iii) granting to the Affiliated Lenders automatically perfected security interests in and liens on all of the Collateral,[2] including, without limitation, all property constituting Cash Collateral, which liens shall be junior to all liens granted in favor of the Prepetition Secured Parties (as defined below) in all respects, to secure the advances, if any, made under the Affiliate Loan Agreement;

(iv) authorizing the Alleged Debtors, from entry of the Interim Order until the Final Hearing, to obtain credit under the terms contained the Affiliate Loan Agreement; and

(v) pursuant to Bankruptcy Rule 4001, scheduling a final hearing (the "Final Hearing") to consider the relief requested in the Motion on a final basis and approving the form of notice with respect to the Final Hearing.

The Court having considered the Motion and the certification of counsel for the Alleged Debtors that the Motion has been served by them on the U.S. Trustee (as defined below), counsel to the Prepetition Secured Parties, the Affiliated Lenders (as defined below), counsel to the Petitioning Creditors (as defined below) and all parties who have requested notice in these Involuntary Cases; and notice of the Interim Hearing having been given in accordance with Bankruptcy Rules 4001(b), (c) and (d) and 9014; and the Interim Hearing to consider the relief requested in the Motion having been held and concluded; and all objections, if any, to the interim relief requested in the Motion having been withdrawn, resolved or overruled by the Court; and it appearing to the Court that granting the relief requested is necessary to avoid immediate and irreparable harm to the Alleged Debtors, and otherwise is fair and reasonable and in the best interests of the Alleged Debtors, their creditors and equity holders, and is essential for the continued operation of the Alleged Debtors' businesses; and it further appearing that the

---

[2] Each capitalized term not otherwise defined herein has the meaning ascribed to it in the Final Financing Order (as defined below).

#4824-6547- 4312v5

-3-

Borrowers are unable to obtain unsecured credit allowable as an administrative expense under Bankruptcy Code Section 503(b)(1);

Based upon the record established at the Interim Hearing by the Alleged Debtors, and after due deliberation and consideration, and for good and sufficient cause appearing therefor;

THE COURT HEREBY MAKES THE FOLLOWING FINDINGS OF FACT AND CONCLUSIONS OF LAW:

A. <u>Involuntary Petition Date</u>. On November 17, 2010 (the "<u>Involuntary Petition Date</u>"), Knighthead Master Fund, L.P., Brookville Horizons Fund, L.P., Davidson Kempner Distressed Opportunities Fund, LP, and Lord Abbett Bond-Debenture Fund, Inc., as alleged creditors (collectively, the "<u>Petitioning Creditors</u>"), filed involuntary petitions for the entry of orders for relief with respect to the Alleged Debtors under Chapter 11 of the Bankruptcy Code (the "<u>Involuntary Petitions</u>"). The hearing concerning whether to enter orders for relief pursuant to the Involuntary Petitions is set to commence on March 31, 2011.

B. <u>Conduct and Nature of Business</u>. The Alleged Debtors manufacture, fabricate and distribute glass products across the automotive, home construction and commercial construction industries. As authorized by Section 303(f) of the Bankruptcy Code, the Alleged Debtors continue to operate their businesses and use, acquire or dispose of property as if an involuntary case had not been commenced against them. No trustee or examiner has been requested or appointed in any of the Involuntary Cases.

C. <u>Financing Motion</u>. The filing of the Involuntary Petitions constituted a Default under (and as defined in) that certain Loan and Security Agreement dated as of June 27, 2003 (hereinafter, together with all amendments thereto and modifications thereof, the "<u>Loan Agreement</u>"), between the Initial Obligors and Bank of America, N.A. (in its capacity as the prepetition secured lender, the "<u>Prepetition Secured Lender</u>"). As a consequence of the

occurrence of the Default under the Loan Agreement, the Prepetition Secured Lender's willingness to continue lending to the Initial Borrowers was conditioned upon the Initial Obligors obtaining, and the Court approving, certain protections in favor of the Prepetition Secured Lender, for itself and for Banc of America Leasing & Capital, LLC ("BALC" and, together with the Prepetition Secured Lender, the "Prepetition Secured Parties"). On November 22, 2010, certain Alleged Debtors and the Prepetition Secured Parties filed a *Joint Emergency Motion for Interim and Final Orders, Pursuant to 11 U.S.C. §§ 105, 303, 361, 363, 364 and 552, (I) Authorizing Alleged Debtors (A) to Continue to Obtain Secured Financing, (B) to Continue to Utilize Existing Cash Management System and (C) to Use Cash Collateral, (II) Approving Post-Petition Financing, (III) Granting Adequate Protection and (IV) Scheduling Interim and Final Hearings* (the "Financing Motion") [Dkt. No. 22].

D. Interim and Final Financing Orders. On December 3, 2010, the Court entered an interim order (the "Initial Financing Order") [Dkt. No. 60] and subsequently, on January 21, 2011, a final order (the "Final Financing Order") [Dkt. No. 137], authorizing the Initial Borrowers, during the Gap Period, inter alia, to continue obtaining secured financing from the Prepetition Secured Lender, as well as to obtain unsecured postpetition financing (the "Affiliate Financing") from Vitro SAB and another non-Debtor affiliate, FIC Regiomontano, S.A.P.I. de C.V. ("FIC" and, together with Vitro SAB, the "Affiliated Lenders"). The Court, however, denied the request to grant to the Affiliated Lenders, with respect to any advances they were to make under the Affiliate Financing during the Gap Period, security interests in and liens upon the Collateral, which liens were to be junior to the liens in favor of the Prepetition Secured Parties in all respects. Notwithstanding such denial, the Court did permit the Affiliated Lenders to renew their request for security interests in and liens upon the Collateral.

E.  **Affiliate Loan Facility**.  The Affiliated Lenders have represented that they are willing to extend credit to the Alleged Debtors sufficient to meet the Alleged Debtors' current operational needs, but will only agree to do so on a secured basis.  The Alleged Debtors have not been able to obtain unsecured lending of this magnitude from any other source, nor have the Alleged Debtors been able to obtain secured financing comparable to that proposed by the Affiliated Lenders.  The Alleged Debtors, therefore, seek authorization to enter into the Affiliate Loan Agreement with the Affiliated Lenders during the Gap Period and grant the Affiliated Lenders the Affiliate Liens (as defined below) upon the Collateral.  The Prepetition Secured Parties have consented to this secured financing arrangement on the terms and conditions set forth in the Affiliate Loan Agreement and in the Interim Order, subject to the requirement that the Affiliated Lenders execute a subordination agreement (the "Subordination Agreement") in form and substance satisfactory to the Prepetition Secured Parties providing that (a) the Affiliate Liens shall be junior to all liens granted in favor of the Prepetition Secured Parties, including, without limitation, the Pre-Petition Liens (as defined in the Final Financing Order), equipment liens granted to BALC as security for the BALC Leasing Obligations (as defined in the Final Financing Order), and liens granted in favor of the Prepetition Secured Parties pursuant to either the Interim Financing Order or the Final Financing Order, and (b) the Affiliate Obligations (as defined below) shall be subordinated to the indefeasible payment in full of the Obligations under (and as defined in) the Loan Agreement, including, without limitation, the Pre-Petition Debt and the Gap Credit Extensions (as these terms are defined in the Final Financing Order).  At the Final Hearing, the Alleged Debtors will seek final approval of the Affiliate Financing pursuant to a proposed final order (the "Final Order"), which shall be in form and substance acceptable to the Affiliated Lenders and the Prepetition Secured Parties and notice of which Final Hearing and Final Order will be provided in accordance with this Interim Order.

F.  Need for Financing.  The Alleged Debtors' need for credit pursuant to the Affiliate Loan Agreement is immediate and critical in order to enable the Alleged Debtors to continue operations.  The ability of the Alleged Debtors to finance their operations and maintain business relationships with their vendors, suppliers and customers requires the availability of working capital from the Affiliate Financing, the absence of which would immediately and irreparably harm the Alleged Debtors, their creditors and equity holders.  The Alleged Debtors do not have sufficient available sources of working capital and financing to operate their businesses or maintain their properties in the ordinary course of business without the Affiliate Financing.  Indeed, to prevent such immediate and irreparable harm to the Alleged Debtors, the Affiliated Lenders extended to the Borrowers $700,000 on March 15, 2011, on the understanding and subject to the condition that the Alleged Debtors would seek *nunc pro tunc* approval of such extension of credit on a secured basis.

G.  Business Judgment and Good Faith Pursuant to Section 364(e).  The Affiliated Lenders have indicated a willingness to extend credit in accordance with the terms of the Affiliate Loan Agreement, subject to:  (i) the entry of this Interim Order and the Final Order, and (ii) entry of findings by this Court that such extension of credit is essential to the Alleged Debtors, that the Affiliated Lenders are extending credit to the Alleged Debtors pursuant to the terms of the Affiliate Loan Agreement in good faith, and that the protections granted to the Affiliated Lenders pursuant to this Interim Order will have the protections provided in Section 364(e) of the Bankruptcy Code and will not be affected by any subsequent reversal, modification, vacatur, amendment, reargument or reconsideration of this Interim Order or any other order.  The extension of credit pursuant to the terms of the Affiliate Loan Agreement was negotiated in good faith and at arm's length among the Alleged Debtors and the Affiliated Lenders.  The  credit to be extended under the Affiliate Loan Facility shall be deemed to have

been so extended in good faith, and for valid business purposes and uses, within the meaning of Section 364(e) of the Bankruptcy Code, and the Affiliated Lenders are therefore entitled to the protection and benefits of Section 364(e) of the Bankruptcy Code and this Interim Order.

      H.      <u>Notice</u>.  Notice of the Interim Hearing and the emergency relief requested in the Motion has been provided, and certified to, by the Alleged Debtors, whether by facsimile, email, overnight courier or hand delivery, to certain parties in interest, including:  (i) the office of the United States Trustee (the "<u>U.S. Trustee</u>"), (ii) counsel to the Prepetition Secured Parties, (iii) the Affiliated Lenders, (iv) counsel to the Petitioning Creditors and (v) all parties who have requested notice in these Involuntary Cases.  The parties have made reasonable efforts to afford the best notice possible under the circumstances and such notice is good and sufficient to permit the interim relief set forth in this Interim Order.

      Based upon the foregoing findings and conclusions, the Motion and the record before the Court with respect to the Motion, and good and sufficient cause appearing therefor,

      IT IS HEREBY ORDERED, ADJUDGED AND DECREED as follows:

      1.      <u>Granting of Motion</u>.  The Motion is hereby granted as and to the extent hereinafter set forth.

      2.      <u>Authorization of the Affiliate Loan Facility</u>.  Entry into the Affiliate Loan Facility, and the Interim Financing (as defined below), is hereby approved.  Subject to the execution of the Subordination Agreement, the Alleged Debtors are expressly and immediately authorized, empowered and directed to execute and deliver the Affiliate Loan Documents, to incur and perform the obligations thereunder in accordance with, and subject to the terms of, this Interim Order and the Affiliate Loan Documents and to deliver all instruments and documents which may be required or necessary for the performance by the Alleged Debtors under the Affiliate Loan Facility and the creation and perfection of the Affiliate Liens.  Upon execution

and delivery, the Affiliate Loan Documents shall represent valid and binding obligations of the Borrowers, enforceable against each of the Borrowers in accordance with their terms. Until the termination of the Gap Period, and subject to the terms and conditions set forth in the Affiliate Loan Documents and this Interim Order, and in order to prevent immediate and irreparable harm to the Alleged Debtors, the Borrowers are hereby authorized to request from the Affiliated Lenders an initial extension of credit up to an aggregate principal amount of $3.5 million at any one time outstanding and *nunc pro tunc* to March 15, 2011, and thereafter, additional term loans in the Affiliated Lenders' discretion (the "Interim Financing").

3. Affiliate Obligations. The Affiliate Loan Documents and this Interim Order shall constitute and evidence the validity and binding effect of the Borrowers' obligations under the Affiliate Loan Facility (the "Affiliate Obligations"), which Affiliate Obligations shall be enforceable against the Borrowers, subject to the Subordination Agreement. Upon entry of this Interim Order, the Affiliate Obligations shall include all loans and any other indebtedness or obligations, contingent or absolute, which may now or from time to time be owing by any of the Borrowers to the Affiliated Lenders under the Affiliate Loan Documents or this Interim Order, including, without limitation, all principal, interest, accrued interest, costs, fees, expenses and other amounts under the Affiliate Loan Documents. The Affiliate Obligations shall be due and payable, without notice or demand, upon the expiration of the Gap Period.

4. Affiliate Liens. In order to secure the Affiliate Obligations, effective immediately upon entry of this Interim Order, pursuant to Section 364(c)(3) of the Bankruptcy Code, the Affiliated Lenders are hereby granted continuing, valid, binding, enforceable, non-avoidable, and automatically and properly perfected security interests in and liens (the "Affiliate Liens") upon the Collateral (excluding the interests of any Borrower in any equipment lease from BALC), subject to the Subordination Agreement. Other than as set forth herein, the Affiliate Liens shall

#4824-6547- 4312v5
-9-

not be made subject to or *pari passu* with any lien or security interest heretofore or hereinafter granted in the Involuntary Cases. The Affiliate Liens shall not be subject to Sections 510, 549 (to the extent a successful action is brought against the Affiliate Lenders) or 550 of the Bankruptcy Code. No lien or interest avoided and preserved for the benefit of the estate pursuant to Section 551 of the Bankruptcy Code shall be *pari passu* with or senior to the Affiliate Liens. This Interim Order shall be sufficient and conclusive evidence of the validity, perfection and priority of the Affiliate Liens, without the necessity of filing or recording any financing statement, mortgage, notice or other instrument or document which may otherwise be required under the law or regulation of any jurisdiction or the taking of any other action to validate or perfect (in accordance with applicable non-bankruptcy law) the Affiliate Liens, or to entitle the Affiliated Lenders to the rights granted herein. Notwithstanding the foregoing, the Affiliated Lenders are authorized to file, as they in their sole discretion deem necessary, such financing statements, mortgages, notices of lien and other similar documents to perfect in accordance with non-applicable law or to otherwise evidence the Affiliate Liens, and all such financing statements, mortgages, notices and other documents shall be deemed to have been filed or recorded as of the Involuntary Petition Date. The Affiliated Lenders, in their sole discretion, may file a photocopy of this Interim Order as a financing statement with any filing or recording office or with any registry of deeds or similar office, in addition to or in lieu of such financing statements, notices of lien or similar instrument, and officers of such filing, recording, registry of deeds or similar offices are hereby authorized and directed to accept for filing as a financing statement a photocopy of this Interim Order in addition to or in lieu of such financing statements, notices of lien or similar instrument.

5. <u>Good Faith Under Section 364(e) of the Bankruptcy Code; No Modification of this Interim Order</u>. The Affiliated Lenders have acted in good faith in connection with this

Interim Order and their reliance on this Interim Order is in good faith. Based on the findings set forth in this Interim Order and the record made during the hearing, and in accordance with Section 364(e) of the Bankruptcy Code, in the event that any or all of the provisions of this Interim Order are hereafter modified, amended or vacated by a subsequent order of this Court or any other court, the Affiliated Lenders are entitled to the protections provided in Section 364(e) of the Bankruptcy Code. Any such modification, amendment or vacatur shall not affect the validity and enforceability of any claim for advances previously made hereunder, or lien created hereby with respect to such claim. Any liens granted to the Affiliated Lenders hereunder arising prior to the effective date of any such modification, amendment or vacatur of this Interim Order shall be governed in all respects by the original provisions of this Interim Order, including entitlement to all rights, remedies, privileges and benefits granted herein.

6. <u>Rights Preserved</u>. Nothing herein shall prejudice or impair in any way the (a) rights or remedies of the Prepetition Secured Lender under the Subordination Agreement or alter the provisions of the Subordination Agreement, which are incorporated herein and approved; or (b) the rights of the Affiliated Lenders or the Prepetition Secured Parties to seek other or additional relief in these Involuntary Cases, including, without limitation, further protection of their interests in any property of any Borrower, relief from the automatic stay and the imposition of additional restrictions of any Borrower's authority to use any Collateral. Notwithstanding anything herein to the contrary, the entry of this Interim Order is without prejudice to, and does not constitute a waiver of, expressly or implicitly, the Alleged Debtors,' the Petitioning Creditors' or any party in interest's right to oppose any of the relief requested in accordance with the immediately preceding sentence except as expressly set forth in this Interim Order. Entry of this Interim Order is without prejudice to any and all rights of the Petitioning Creditors, the U.S. Trustee and any other party in interest with respect to the terms and approval of the Final Order

and any other position which any party in interest deems appropriate to raise in the involuntary Chapter 11 cases.

7. <u>Final Hearing</u>. The Final Hearing to consider entry of the Final Order and final approval of the extension of credit and use of Cash Collateral is scheduled for March __, 2011 at _____ a.m. (Central) before the Honorable Judge Russell F. Nelms, United States Bankruptcy Judge, 501 W. Tenth Street, Room 204, Fort Worth, TX 76102-3643. On or before _____, 2011, the Alleged Debtors shall serve, by United States mail, first-class postage prepaid, notice of the entry of this Interim Order and of the Final Hearing (the "<u>Final Hearing Notice</u>," together with copies of the Interim Order, the proposed Final Order and the Motion, on: (a) the parties having been given notice of the Interim Hearing; and (b) any party which has filed prior to such date a request for notices with this Court. The Final Hearing shall state that any party in interest objecting to the entry of the proposed Final Order shall file written objections with the Clerk of the Court no later than on _____, 2011 at 4:00 p.m. (Central), which objections shall be served so as to be received on or before such date by: (a) counsel to the Alleged Debtors, attn: William R. Greendyke, Esq. and Louis R. Strubeck, Jr., Esq., Fulbright & Jaworski L.L.P., 2200 Ross Avenue, Suite 2800, Dallas, Texas 75201, and Dennis F. Dunne, Esq., Milbank, Tweed, Hadley & McCoy LLP, 1 Chase Manhattan Plaza, New York, NY 10005; and (b) counsel to the Affiliated Lenders, attn: Alejandro Sanchez Mujica, Vitro, S.A.B. de C.V., Ave. Ricardo Margain #400, Col. Valle del Campestre, San Pedro Garza Garcia, Nuevo Leon, 66265 Mexico.

8. <u>Immediate Effectiveness</u>. This Interim Order shall be valid, take full effect and be enforceable immediately upon entry hereof, notwithstanding any contrary Bankruptcy Rule, and there shall be no stay of execution or effectiveness of this Interim Order. This Interim Order shall be effective only through the Gap Period.

9. <u>Retention of Jurisdiction</u>.  This Court has and will retain jurisdiction to enforce this Interim Order according to its terms.

****** END OF ORDER ******